## THE STATE v. JESSE WATSON, Appellant.

**Division Two, February 2, 1909.**

1. **INFORMATION: Sufficiency: Manslaughter in Fourth Degree: Operating Automobile.** The statute (Sec. 1834, R. S. 1899) provides that the killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable or is not declared in the same chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree; and an information founded thereon, charging the offense in the language of the statute, and charging that defendant carelessly, recklessly and with culpable negligence operated and propelled his automobile along a public street at and upon deceased, etc., sufficiently charges the statutory offense. It was not essential that the information undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted.

2. **AUTOMOBILE: Speed: Experts.** The rate of speed at which an automobile was run is not a matter exclusively for expert testimony. Witnesses who know what an automobile is and have seen them operated, may give their opinion as to' the rate of speed. The weight to which such opinions are entitled is a matter for the jury.

3. ——: ——: **Carelessness.** Three girls, the deceased thirteen years old, were about ten o'clock at night crossing an asphalt-paved street, at a street crossing, where the view was unobstructed and lights were going. Deceased was struck by an automobile driven by defendant, knocked down, and the wheels ran over her body. There was loud screaming, and defendant testified that he was running ten miles an. hour, did not stop, and did not know he had struck anyone. Other witnesses testified that the automobile was running from thirty to fifty miles an hour, and some of them gauged the speed by their acquaintance with the speed of bicycles, sleeping cars and buggies, and some of them were near at hand and others one hundred and seventy feet away. The testimony for the State overwhelmingly shows that the automobile was being run at a careless and reckless speed, and, *Held*, that this recklessness and carelessness is emphasized by the uncontradicted testimony as to the loud screams of the little girls and by the testimony of defendant that he did not hear those screams and did not know he had struck deceased, and was sufficient to sustain a verdict finding defendant guilty of manslaughter in the fourth degree.

4. ——: ——: ——: **Duty of Driver.** Individuals or corporations, operating a dangerous machine in a public street, such as an automobile, must have due regard for the rights of the public, and if they fail in this and recklessly, negligently and carelessly destroy human life, an impartial administration of justice requires that they should suffer the punishment imposed by the statutes.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) The information fails to allege facts sufficient to constitute the offense denounced by Sec. 1834, R. S. 1899. No facts are alleged. The only fact alleg-

ed in the information is that the automobile operated by defendant struck Christine Musick, and that death resulted from her injuries. No specific acts done or omitted by defendant from which culpable negligence could be inferred are alleged in the information. The information should allege specifically the culpable negligence which caused the collision and resulted in the death of Christine Musick. The rule of pleading in a civil case is that the acts done or omitted which constitute the negligence complained of should be stated with a reasonable degree of particularity. Gurley v. Railroad, 93 Mo. 445. There can be no recovery upon a general allegation of negligence which gave no notice of facts, but states only conclusions. Murdock v. Brown, 16 Mo. App. 549. Can you glean from the information the acts done or omitted by defendant which constituted his culpable negligence in the operation of the automobile? Was it running the machine at a high rate of speed? Was it failure to sound a horn when approaching the street crossing? Was it failure to have lights on machine? Was it failure to stop machine when he discovered or could by the exercise of ordinary care have discovered that deceased was in a position of danger? Was it for a violation of the State statute by running an automobile in the business portion of the city of St. Louis at a rate of speed exceeding eight miles? Did he violate the speed limit by running in the city of St. Louis at place other than the business portion of the city at a rate of speed exceeding ten miles an hour? The instructions given by the court demonstrate that allegations of specific facts should have been made to notify defendant of the acts of commission or omission which constituted his culpable negligence. The innocence of the accused is not inconsistent with the averments of the information. On the subject of indictments under section 1834, supra, see following: State v. Smith, 66 Mo. 92; State v. Sundheimer, 93 Mo. 311; State v. Lockwood, 119 Mo.

463.   Culpable means deserving of censure, criminal. The information should allege the culpable negligence, the acts which were criminal and deserving of censure.   (2)   That it was reversible error to permit witnesses for the State who knew nothing about the operation of automobiles to guess at the rate of speed at which the automobile was running just before deceased was struck requires no argument.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1)   The information sets forth facts sufficient to charge manslaughter in the fourth degree under the statute.   R. S. 1899, sec. 1834; 2 Bishop's New Crim. Procedure (4 Ed.), sec. 502; People v. Pearne, 118 Cal. 157; State v. Sundheimer, 93 Mo. 313; State v. Lockwood, 119 Mo. 463; State v. Moore, 129 Iowa 514. (2)   The trial court committed no error in permitting witnesses to testify as to the rate of speed at which the automobile was running.   (a) Witnesses who are not experts are competent to give their opinion as to whether a body is moving fast or slow.   The rate of speed of moving cars may be shown by the opinion of a witness who saw the cars in motion. The experience and capacity of the testifying witness, and the consequent reliability and value of his testimony, would affect the weight, but not the competency and admissibility, of the evidence.   Lawson on Expert and Opinion Evidence (4 Ed.), 504, 505. 1 Elliott on Evidence, secs. 676, 683; Walsh v. Railroad, 102 Mo. 586; Stotler v. Railroad, 200 Mo. 123; Aston v. Railroad, 105 Mo. App. 231.   (b)   The testimony of witnesses as to the rate of speed of the automobile as it approached or departed from the immediate scene of the tragedy was competent and admissible, and it was for the jury to give it such weight as they might think it entitled to, in connection with all the other evidence in the case, in determining the manner in which the automobile was

being operated at the time deceased was struck. Lynch v. Railroad, 208 Mo. 38.

FOX J.—This cause is now before this court upon appeal by the defendant from a judgment of conviction of manslaughter in the fourth degree in the circuit court of the city of St. Louis.

On the 25th day of November, 1907, the assistant circuit attorney of the city of St. Louis filed an information, duly verified, in the circuit court of the said city, charging the defendant with manslaughter of the fourth degree. As the sufficieny of the information is challenged it is well to reproduce it. Omitting formal parts the charge is thus stated:

"Richard M. Johnson, assistant circuit attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Jesse Watson on the thirty-first day of October in the year of our Lord, one thousand nine hundred and seven, at the city of St. Louis aforesaid, with force and arms, in and upon one Christine Musick, feloniously, carelessly, recklessly and with culpable negligence did then and there make an assault; and that the said Jesse Watson was then and there in charge and control of and operating and managing a certain automobile, moving and being propelled along and upon Locust street, a public highway of the said city of St. Louis; and that the said Jesse Watson then and there, at said city of St. Louis, on said thirty-first day of October, one thousand nine hundred and seven, feloniously, carelessly, recklessly and with culpable negligence, did drive, propel and force said automobile with great force and violence at, against and upon said Christine Musick, and then and there feloniously, carelessly, recklessly and with culpable negligence, did with great force and violence

throw and cast said Christine Musick to the ground and pavement, and drive, propel and force two of the wheels of said automobile against, upon and over the head and body of said Christine Musick, then and there feloniously, carelessly, recklessly and with culpable negligence giving to the said Christine Musick by means of said throwing and casting upon the ground and pavement, in and upon the head of the said Christine Musick, three blows, and shock and concussion of the brain, of which said blow on the head and said shock and concussion of the brain she the said Christine Musick then and there did languish, and languishing did live from said thirty-first day of October, A. D. 1907, to the third day of November, A. D. 1907, on which said third day of November, A. D. 1907, the said Christine Musick, of the said blow on the head and said shock and concussion of the brain, at the said city of St. Louis, did die.

"And so the said Richard M. Johnson, assistant circuit attorney, as aforesaid, upon his official oath aforesaid, does say that the said Jesse Watson, on the said thirty-first day of October, 1907, at the city of St. Louis aforesaid, her the said Christine Musick in the manner and form and by the means aforesaid then and there feloniously, carelessly, recklessly and with culpable negligence did kill and slay; against the peace and dignity of the State."

On the 27th day of November, 1907, the defendant was duly arraigned and entered his plea of not guilty. The cause was then continued to the next term of said court, at which time the defendant interposed a demurrer to the information, which was by the court overruled. On the application of the defendant the cause was again continued. On the 12th day of November, 1908, the trial of said cause was begun and upon said trial the evidence developed tended substantially to show the following state of facts:

The deceased, Christine Musick, aged twelve years, with her sister, Helene Musick, aged fourteen years, and Ethel Dickson, a girl friend, on the evening of the 31st day of October, 1907, attended a musical at the Lucas Avenue Presbyterian Church in said city. A little past the hour of ten that night, the said three girls, having left said church for their homes, walked southward on the west side of Channing avenue, in said city, and as they were crossing Locust street, an automobile, driven by the defendant, struck the deceased, Christine Musick, with great force, knocking her down, breaking her limbs and bruising her head, from which injuries on the 3rd day of November, 1907, she died. Several witnesses testified that immediately after the passing of the automobile Christine was found lying in Locust street, four to six feet from the curbstone, on the north side of said street, where pedestrians on Channing avenue cross Locust street. In the street near her were found broken parts of her watch, which she was carrying when struck. She was found in an unconscious condition, and never regained consciousness. She was removed to a pharmacy, and from there to a hospital, where she died. From the intersection of Channing avenue and Locust street, the former running north and south and the latter east and west, the scene of Christine's injury, there was a clear and unobstructed view for as much as four hundred feet in each of the four directions. At that time numerous lights were shining brightly in that neighborhood, which was a section of the city principally built up with structures devoted to business, together with some residences. Locust street at that place was paved with asphaltum, and it was crossed by street car tracks running north and south on Channing avenue. The space of the street within the street car tracks, and for about a foot and a half on either side, was paved with granite blocks. At the time the girl was struck, she and her companions had taken but a

few steps on Locust street in their movement south-
ward in crossing the same. The automobile, which
struck and killed the little girl, came from the east-
ward at a high rate of speed and passed on to the
westward without halting after striking her. The
automobile was occupied by several persons, includ-
ing one or more women, and the defendant, who was
driving the same. At and near the intersection of
Channing avenue and Locust street at that time were
numerous persons passing to and fro. Nearly all of
the twelve witnesses who testified for the State were
close enough at the time to hear the screams of the
girls at the time Christine was struck, but no witness
testified to having heard the sounding of the horn of the
automobile, or other warning sounds of its approach
to the girls. Max Zimmerman testified that he was
about four or five steps behind Christine when she was
struck, and that he immediately sprang to her relief,
and as he was about to pick her up he noticed the auto-
mobile had arrived opposite a factory eighty feet dis-
tant. He had been a bicycle racer and was accustomed
to estimating the speed of moving objects, and he gave
it as his opinion that the antomobile at that time was
running at the rate of about fifty miles per hour. In
response to the question of a juror as to whether he
considered that the automobile was running at a mod-
erate rate of speed, or at a high rate of speed, fast or
slow, he answered that it was running fast. He said
that he came to the conclusion that it was running fast
because he saw it and heard it. Several witnesses who
saw the said automobile running on Locust street with-
in a block east of Channing avenue, and also several
witnesses who saw the automobile running within a
block or two west of Channing, all testified that de-
fendant was driving said automobile at a high rate of
speed. Peter A. McDaniel swore that he saw the auto-
mobile crossing the tracks on Channing avenue just be-
fore it struck the girl, and it was at that time going

very fast.   Helene Musick, who was present when her sister was struck, said that, as she went on across the street, she looked at the passing automobile, and it was going very fast, and was out of sight right away. George D. Pettes, a police officer, who formerly had been a Pullman-car conductor, and had had opportunity and experience in respect to observing the speed of running trains, testified that at the time in question he was at the northwest corner of Channing avenue and Olive street, about 170 feet south of the south line of Locust street, from which position he saw defendant driving the car across Channing, and heard the screams of the girls.   He testified that the automobile, as it crossed Channing avenue on Locust street, was running at the rate of about forty miles an hour. David A. Feinenstein testified that about ten o'clock on the night in question he was driving with his wife and baby in a buggy westward on Locust street, and when on Locust street, about 135 feet east of Channing avenue, defendant passed him with his automobile.   Witness was driving a fast horse at full speed at the time the automobile passed him.   The automobile passed his buggy at such a high rate of speed that it frightened his wife as it rushed by.   He observed the automobile passing onward across Channing avenue, heard the screams of the girls, and saw Christine's companions escaping the automobile.   He had had experience in the speed of moving objects, given by bicycle riding, and he was of the opinion that defendant's automobile crossed Channing avenue at a speed of from forty to fifty miles an hour.   He said that after the child was struck the machine veered towards the curbstone on the south side of Locust street and tilted, and it looked like it would turn over, running as if standing on its left wheels.   As it veered, he saw two persons standing up in it as if one were trying to pull the other down.   The automobile, without halting, passed rapidly onward from view.

The defendant offered several experienced automobile men as witnesses, who testified, as experts, that it was not possible to operate such a machine as the one in question, making the turns described in evidence, at the rate of forty miles an hour. They conceded that such a speed could have been made at the rate of twenty to thirty miles an hour. They also testified that such a machine running twenty-five miles an hour could be stopped still while running a distance of fifty feet, and that the speed of such a machine running forty miles an hour could be reduced to twenty-five miles an hour while running fifty or sixty feet. It also appeared from their testimony that he had at former times participated in the racing of automobiles.

The defendant, taking the witness stand in his own behalf, testified that he was twenty-five years of age, and that he was operating the automobile car at the time in question. He said that at the time he crossed Channing avenue he was running about ten miles an hour, and that after crossing Channing avenue he did not know that his car had struck anybody.

At the close of the evidence the court fully instructed the jury upon every phase of the case to which the testimony was applicable. The cause was submitted to the jury and they returned their verdict finding the defendant guilty of manslaughter of the fourth degree, as charged in the information, and assessed his punishment at a fine of one thousand dollars and imprisonment in the city jail for a term of twelve months.

Timely motions for new trial and in arrest of judgment were filed and by the court overruled, and judgment was rendered in accordance with the verdict returned by the jury, and from this judgment the defendant prosecuted this appeal and the record is now before us for consideration.

## OPINION.

The legal propositions disclosed by the record, as well as the brief of learned counsel for appellant, may thus be briefly stated:

First—It is insisted that the information fails to allege facts sufficient to constitute the offense denounced by section 1834, Revised Statutes 1899.

Second—That the court committed reversible error by permitting witnesses for the State, who knew nothing about the operation of automobiles, to give their opinions as to the rate of speed at which the automobile was running just before deceased was struck.

Third—Complaint is made that the assistant circuit attorney made improper remarks in his argument on behalf of the State to the jury.

### I.

Directing our attention to the first proposition as to the sufficiency of the information to support the judgment, we find that the information charges the defendant with the commission of manslaughter of the fourth degree, and is predicated upon the provisions of section 1834, Revised Statutes 1899, which provides:

"Every other killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

The question involved in this proposition seems to be one of first impression so far as the adjudications of this court are concerned. Counsel representing both the State and the defendant have not directed our attention to any case predicated upon a similar

state of facts, nor have we been able, after diligent search, to discover any adjudications which are specially applicable to the point involved; hence the solution of this proposition must be sought by the application of well-settled principles to the proposition confronting us.

It is fundamental that an indictment or information predicated upon the provisions of a statute, must charge the offense in the language of the statute, and the allegations in the indictment or information must be sufficient to fully inform the defendant of the nature and character of the offense he is called upon to answer upon his final trial.

It is sufficient to say upon this proposition that, applying this fundamental principle of pleading in criminal causes, in our opinion this information sufficiently charges the offense of which the defendant was found guilty.

The statute upon which this information is based provides that the killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree.

The facts upon which this information is predicated were the negligent use and operation of an automobile, the propelling of which is universally recognized as being attended with great danger to the traveling public who make use of the streets. This information charges that defendant carelessly, recklessly and with culpable negligence operated and propelled this automobile. It charges that this defendant was then and there in charge and control of and operating and managing a certain automobile, moving and being propelled upon Locust street, a public highway of the said city of St. Louis, and that the said Jesse Watson then and there, at said city of St. Louis, on said thirty-

first day of October, one thousand nine hundred and seven, feloniously, carelessly, recklessly and with culpable negligence, did drive, propel and force said automobile with great force and violence at, against and upon said Christine Musick. Then follows the charge of the infliction of the wounds by reason of such carelessness, recklessness and culpable negligence, and it is again charged that the defendant carelessly, recklessly and with culpable negligence, did with great force and violence throw and cast said Christine Musick to the ground and pavement; and drive, propel and force two of the wheels of said automobile against, upon and over the head and body of said Christine Musick, thereby inflicting certain designated wounds and bruises, from which the said Christine Musick died.

This, in our opinion, is a sufficient charge and fully informed the defendant of the nature and character of the offense he was called upon to answer. It was not, in our judgment, essential that the information should undertake to set out in detail in what such carlessness, recklessness and culpable negligence consisted, but the charge that he operated and propelled this automobile along a public street carelessly, recklessly and with culpable negligence was in effect notifying the defendant that he was not using, operating or propelling his automobile in accordance with the law or the ordinances of the city regulating the use and operation of such machines.

Manifestly the defendant knew that he would have to meet the charge of carelessness, recklessness and culpable negligence in the operation of his automobile, and in meeting such charge doubtless his only defense would be that he operated and propelled such automobile in accordance with the laws and ordinances of the city, duly passed, regulating the running of such vehicles. The defendant could not have been misled by this charge. He could not have been taken by sur-

prise. Under the allegations in this information he must have known that the State would undertake to develop every fact which tended to establish any sort of negligence, carelessness or recklessness in the operation of that machine.

## II.

It is insisted that the trial court committed error in permitting witnesses for the State, who knew nothing about the operation of automobiles, to give their opinions as to the rate of speed at which the automobile being operated by the defendant was running just before the deceased was struck.

It is sufficient to say upon this proposition that in our opinion the rate of speed at which an automobile is running is not a matter exclusively for the testimony of experts. If that was true, then, as has been intimated by this court, it would be a matter of impossibility for those injured by the running of vehicles, either automobiles, street cars or regular railroad cars, to always have experts at hand to show what rate of speed was being made. A holding of that character would be wholly impracticable, and do a great injustice to many persons who had been negligently injured by vehicles of the character indicated running at an excessive rate of speed. At last the only reasonable settlement of that question is to hold that witnesses who at least know what an automobile is and have seen them operated, might give their opinions as to the rate of speed. As to the weight to which such opinions are entitled, that is a matter entirely for the jury.

A number of witnesses were examined as to the rate of speed that this automobile was being run, some near by and others expressing opinions who were at some distance. It was for the jury at last to weigh the testimony of such witnesses, giving to their

testimony such credit as their opportunities and means of knowledge entitled it to.

That this automobile was being run at an excessive rate of speed, in fact was being propelled at such a rate of speed as made it carelessness and reckless, the testimony, in our opinion, overwhelmingly shows. The testimony of the witnesses for the State clearly established an improper and unlawful rate of speed of this vehicle, and the truth of this testimony is emphasized by the testimony of the defendant. The defendant, in his testimony, says that after crossing Channing avenue he did not know that his car had struck anybody. The uncontradicted testimony in this case is that the screams of the little girls at the time of this accident were heard some blocks away, and that the automobile struck and ran over a substantial part of the body of the little girl that was killed. In view of this state of facts, if the defendant did not know that he had struck anybody, such want of knowledge can only be attributed to the running of his automobile at such a careless and reckless rate of speed that the screams of the children and the striking of the body of one of them failed to make any impression upon him. Manifestly had he been operating this machine at a speed of only ten miles an hour he would not have failed to have heard the noise and screams made by the little girls, nor would the striking of the body of this little girl which inflicted the fatal injuries upon her, have failed to impress him that someone had been struck by his machine. If this defendant did not know that someone had been struck by his automobile then the conclusion as above indicated is the only rational one that can be reached.

### III.

Learned counsel for appellant complains of certain remarks made by the assistant circuit attorney in his address to the jury. It will suffice to say that

State v. Watson.

we have read in detail the remarks to which objection is made, and have reached the conclusion that they are insufficient to authorize the reversal of this judgment.

### IV.

This brings us to the consideration of the testimony developed upon the trial and the instructions of the court applicable to such testimony. We have read in detail the testimony of all the witnesses in this case as well as all of the instructions given by the court. The testimony fully supports the verdict; in fact, we are unable to comprehend how any other conclusion could have been reached by the jury. If the testimony of the State was believed by the jury, this case presents one of a careless and reckless destruction of human life. The court fully, fairly and correctly, in our opinion, declared the law applicable to every phase of this case to which the testimony was applicable.

Individuals as well as corporations in the use and operation of dangerous machines, should have a due regard to the preservation of the rights of the public in the use of the public streets, as well as the protection of persons using such streets from injury, and if they fail in this, and should in the operation of a vehicle which is always attended with more or less danger, negligently, carelessly and recklessly destroy human life, it is but in keeping with the proper and impartial administration of justice that the penalties should be suffered for the commission of such acts.

We have carefully analyzed the record before us in this cause and indicated our views upon the legal propositions disclosed by such record. We fail to find any reversible error in the record before us, so it results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.