Madding v. State.

Opinion delivered May 17, 1915.

1. Criminal law—homicide—sufficiency of indictment—automobile accident.—An indictment charging defendant with second degree murder, caused by striking deceased with an automobile, the same being operated in an unlawful manner, held sufficient to put defendant upon notice of what crime he was charged with committing, and to sufficiently describe the same.

2. Homicide—involuntary manslaughter—intent.—An involuntary killing without design, in the commission of some unlawful act, or in the improper performance of some lawful act, constitutes the crime of involuntary manslaughter.

3. Trial—homicide—remarks of prosecuting attorney.—In a prosecution for homicide when deceased was killed by defendant while in the reckless and unlawful operation of an automobile, argument of counsel on the fact of defendant's recent marriage, held not prejudicial.

4. Homicide—automobile—reckless driving.—In a prosecution for homicide when deceased was killed by the reckless and unlawful operation of an automobile, an instruction held proper which charged the jury that "no man has the right to use a public street of a city as a speedway, but every man has a right to drive an automobile on the streets, just as much right as a man has to

drive a buggy in it, or to cross it on foot, but whenever any man uses a dangerous machine, he must guard the exercise of that right with proper care and due regard for the lives and safety of people who have an equal right to be upon the streets."

5. HOMICIDE—AUTOMOBILE—DUTY OF CARE.—It is the duty of the driver of an automobile on the streets of a city to keep his machine under such control as to be able to check the speed or stop it absolutely if necessary to avoid injury to others, where danger could reasonably be expected or was apparent.

6. HOMICIDE—CONVICTION—AUTOMOBILE.—In a prosecution for homicide; *held,* under the evidence that defendant was guilty of wanton and reckless carelessness in driving his automobile and killing deceased, and that a conviction of involuntary manslaughter would be sustained.

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was indicted for murder in the second degree alleged to have been committed by running down and killing James H. Harrod, with an automobile, upon the streets of the city of Little Rock. He was found guilty of involuntary manslaughter and sentenced to ninety days' imprisonment in the penitentiary, and from the judgment of conviction prosecutes this appeal.

The indictment charges:

"The grand jury of Pulaski County, in the name and by the authority of the State of Arkansas, accuse J. E. Madding of the crime of murder in the second degree committed as follows, towit: The said J. E. Madding, in the county and State aforesaid, on the 15th day of August, A. D. 1913, unlawfully, wilfully, wantonly, feloniously and with malice aforethought did kill and murder J. H. Harrod, by then and there striking and causing to be struck the said J. H. Harrod with an automobile, said automobile being then and there operated, managed and driven by said J. E. Madding in an unlawful, wilful, wanton, careless and negligent manner by the said J. E. Madding, and while he, the said J. E. Madding, was then and there driving, managing, operating and driving said automobile in an unlawful, wilful, careless, wanton and negligent man-

ner, and without due regard for the rights and life of persons, he, the said J. E. Madding, did then and there unlawfully, wilfully, feloniously, wantonly and carelessly and with malice aforethought, strike the said J. H. Harrod, and cause him to be struck by said automobile, and by reason of the said J. H. Harrod being struck by the said automobile, while it was being unlawfully, wilfully, feloniously, wantonly, carelessly and negligently managed, operated and driven by the said J. E. Madding, he, the said J. H. Harrod, died on the said 15th day of August, 1913, from the effects of said striking, by said automobile, against the peace and dignity of the State of Arkansas.''

A demurrer was interposed and overruled and afterward a motion in arrest of judgment was made on the ground that the indictment did not state facts sufficient to constitute a public offense, which was also overruled.

Hon. James H. Harrod was struck and killed by an automobile driven by the defendant at the intersection of Fifteenth street and Broadway in the city of Little Rock. He had alighted from the street car going west on the west side of Broadway and walked around the back end of the car going south across Fifteenth street, and was struck by the rapidly approaching automobile going east, as he came from behind the car, and hurled thirty feet through the air, and instantly killed.

The defendant was driving a blue racing car of high power which he had bought at a garage in town and which had been stripped of the fenders for repairs. He got the car from the garage at the request of his friend, Asa Gracie, to drive him and a young lady he was accompanying home, meeting them at Third and Louisiana streets. They went down to Main Street and drove out south to Twenty-third, going at so rapid a rate that when they passed Henry McCain and J. H. Martin in another car, McCain's attention was attracted to the speed and he exclaimed, ''It's going like a bat out of hell.''

They turned in to Twenty-third Street, went west to Gaines and turned north on Gaines, driving at such a

rapid rate as to attract the attention of Dolly Stark, who was sitting at the fire station, and cause him to exclaim, "Go, you blue devil."

Mrs. Adamson, who stated she was accustomed to driving an automobile and knew and was acquainted with the speed of automobiles, was standing on her front porch on Gaines Street, and saw this car pass and exclaimed, "Mercy, how fast it is going," said, "It went by like a flash."

Other witnesses estimated the speed at forty or fifty miles an hour on Gaines Street. The automobile slowed down as it turned off Gaines into Fifteenth Street two blocks from the place of the injury, but passed the street car two blocks east, and struck Judge Harrod while going at a high rate of speed, variously estimated at thirty to forty miles an hour.

The defendant stated that they were not going so very fast after coming on to Fifteenth, that he noticed the street car standing, was driving along at from twelve to fifteen miles an hour when the driver of a delivery wagon started diagonally across the street from the south side to go down Broadway; that he swerved the automobile in close to the street car to prevent a collision with the wagon and struck the right fore wheel of the delivery wagon, and Judge Harrod immediately stepped from behind the car and was struck by the automobile. That he threw the brake into the emergency, as soon as he saw he was going to strike the wagon, but it was impossible to keep from striking him, for as he struck the wagon "something came out from behind the street car and stepped into the automobile and fell back."

A witness in the street car testified that as he looked up he saw a blue automobile or "something go by like a bird flying, or a shadow"—that it was all in an instant. He noticed a wagon near the sidewalk and the automobile near the wagon and the street car, and turned and saw Judge Harrod fall. He did not see the automobile strike him.

Ed Linzell stated he was on the northwest corner of Fifteenth and Broadway, facing to the northeast toward the Davis home. His attention was attracted to the automobile going by and about that time the car stopped and "he looked and saw Mr. Harrod falling; looked like he fell from the top of the automobile. He was up in the air and fell about the middle of the street, a little to the west. He fell about the middle of Broadway and about on the north rail of the car line on Fifteenth Street. The automobile was going east and it was going fast. It looked like it went under Mr. Harrod. I did not see it strike him but I saw him fall. It looked like he fell from the back seat of the automobile."

J. B. Wood heard the street car stop on the northwest corner of the street and just after it started he heard a shout, turned and saw a man lying in the street. Did not see an automobile. Said the street was in full view when he turned but he did not see nor hear an automobile nor any horn. "The boy who was struck was lying down at the corner of Senator Davis' place."

Dallas Herndon testified he was on the street car and saw the automobile running at a very rapid rate of speed. Saw it first on Main Street. He was standing on the front end of the street car as the automobile came into Fifteenth Street from Gaines, and it was going at a high rate of speed on Fifteenth, higher than cars ordinarily run. He noticed it until it passed the street car and it continued at an unusual rate of speed; he did not notice the slowing of the speed at the time it passed the front end of the street car, and it was his opinion that the automobile was going from thirty to forty miles an hour. That instantly after it passed the front of the street car he heard a crash—did not see the car strike Mr. Harrod. He alighted from the car and found Harrod's body lying diagonally between the tracks across the street, somewhere near the center of the intersection of the two streets, Broadway and Fifteenth. That the automobile came into Fifteenth Street from Gaines after the street car stopped at Broadway and passed the front end of the

street car just as it started to move up.   He did not no-
tice the express wagon, his attention being directed to the
automobile.

Ben Smith testified that he saw Mr. Harrod get off
the street car and looked up Fifteenth Street, about the
middle of the block, and saw a little blue car coming to-
ward the street car running fast, and exclaimed, "Look,
Mr. Wood; ain't that car coming some!"   The next thing
he saw the wagon coming down by the side of the street
car, nearly even with it, and then he heard a crash and
thought the automobile ran into the wagon.   He went to
the back platform and saw Judge Harrod lying on the
north track of the car line, about the middle of Broadway
Street.

The defendant stopped his car as soon as possible
after striking Mr. Harrod, expressed deep regret over the
occurrence, which he said was an accident that could not
possibly have been avoided, and went immediately for a
physician.

*Jas. A. Gray, X. O. Pindall* and *Mehaffy, Reid & Me-
haffy,* for appellant.

1.   The indictment was not sufficient to secure de-
fendant his substantial rights upon the trial.   The unlaw-
ful act, the essence of the offense, is not charged.   99 Ark.
188.   No excessive rate of speed is charged, nor any vio-
lation of any city ordinance.   The indictment is misleading
and indefinite.   26 Ark. 323; 27 *Id.* 494; 29 *Id.* 165; 34 *Id.*
263; 102 *Id.* 598.

2.   The remarks of the prosecuting attorney were
prejudicial.   12 Cyc. 589; 140 Am. St. 378; 9 *Id.* 559, and
note.

3.   The instructions of the court that, "No man has
the right to use the public streets * * * as a *speedway;* and
"But when a man uses a *dangerous machine* he must
guard the exercise of the right with a proper care and
due regard for the lives and safety of people," etc., were
error.   They assumed that defendant was using the street
as a speedway and that an automobile is *per se* a danger-

ous machine.    59 Ark. 417; 111 N. Y. Supp. 1057; 70 L. R. A. 627.

4.    Incompetent testimony was admitted and it was prejudicial.    100 Ark. 232.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.    The indictment is sufficient.    33 L. R. A. (N. S.) 403, 405; 216 Mo. 420; 115 S. W. 1011.

2.    The prosecuting attorney's remarks were not prejudicial.    He merely stated his opinion on the weight of the evidence.    79 Ark. 25; 91 *Id.* 576; 109 *Id.* 594, 602.

3.    No incompetent testimony was admitted.    100 Ark. 232, 235.

4.    There is no error in the instructions.    168 S. W. 35, 37; 8 L. R. A. 1228, 1230; 18 Ann. Cas. 236.

Kirby, J., (after stating the facts).    It is insisted first for reversal that the indictment is insufficient and that the court erred in not sustaining the demurrer and granting the motion in arrest of judgment.

(1)    There is no merit in the contention that the allegations of the indictment are so indefinite and uncertain as not to put the defendant on notice of the crime with which he is charged, nor was it defective for failure to allege with more particularity the manner of causing the death of the deceased.    It charges that the defendant "unlawfully, wilfully, wantonly, feloniously and with malice aforethought, did kill and murder J. H. Harrod, by then and there striking and causing to be struck the said J. H. Harrod, with an automobile, said automobile being then and there operated, managed and driven by said defendant in an unlawful, wilful, wanton, careless and negligent manner," etc.

We think the allegations of the indictment sufficient to put the defendant on notice that he was charged with killing the deceased by striking him with an automobile, driven in an unlawful, wilful, careless and negligent manner, in effect notifying him that it was not being operated

in accordance with either the laws of the State or the ordinances of the city regulating the use of automobiles.

In *Schultz* v. *State,* 33 L. R. A. (N. S.) 403, the Supreme Court of Nebraska, in holding sufficient an indictment of about the same tenor and effect as the one herein, upon demurrer, said:

"A like question was before the Supreme Court of Missouri in *State* v. *Watson,* 216 Mo. 420, 115 S. W. 1011, upon a similar information, in which defendant was charged with killing a pedestrian while carelessly, recklessly and negligently running his automobile over and upon a certain street of St. Louis. Speaking of the information in that case, the court said: 'This in our opinion is a sufficient charge, and fully informed the defendant of the nature and character of the offense he was called upon to answer. It was not, in our judgment, essential that the information should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted, but the charge that he operated and propelled this automobile along a public street, carelessly, recklessly and with culpable negligence, was in effect notifying the defendant that he was not using, operating or propelling his automobile in accordance with the law or the ordinances of the city, regulating the use and operation of such machines.'"

(2) The defendant was only convicted of involuntary manslaughter and the manner of the killing was not material in any event, since it would only have tended to show the disposition of mind or the intent with which the act was committed and no intent to kill is required to constitute the offense of involuntary manslaughter.

An involuntary killing without design in the commission of some unlawful act or in the improper performance of some lawful act, constitutes the offense. *Tharp* v. *State,* 99 Ark. 188.

Neither do we think the testimony concerning the exclamations of the different witnesses upon noticing the running automobile were incompetent, being only indicative of their opinion of its speed. Each of these witnesses

also gave his estimate of the rate of speed of the automobile and some then said it was going so fast as to cause them to make the exclamations complained of. Like involuntary remarks and exclamations by witnesses not shown to be acquainted with the speed of automobiles were held competent in the case of *Bowen* v. *State,* 100 Ark. 232.

In closing the argument the prosecuting attorney made the following statement, which was objected to:

"It seems to me, gentlemen of the jury, that they have lugged in here of their own accord—it certainly would be improper for me to make any reference except it had been lugged in here before you against our will—I would not for one moment say aught to wound the feelings of any one, and much less the beautiful bride that had married him, but I say, gentlemen of the jury, they lugged that in here before you, but they knew before they entered the bonds of matrimony the indictment was pending here against the defendant for murder in the second degree. They knew that. And I say I wouldn't refer to these things but for the fact that it has been lugged in here and hammered upon—why, it seems even in that sacred act the defendant went on with that reckless disregard of the propriety of the occasion that he manifested evidently under the evidence here in this case when he killed and murdered and butchered James H. Harrod."

(3) We think there was no reversible error committed in the making of this statement, which appears from other statements of the record to have been invited, and it was at most but a statement of the prosecuting attorney's opinion of the weight of the testimony in the case. *Smith* v. *State,* 79 Ark. 25; *Holt* v. *State,* 91 Ark. 576; *Valentine* v. *State,* 108 Ark. 594.

(4) It is next contended the court erred in its charge to the jury, as follows:

"No man has the right to use a public street of a city as a speedway, but every man has a right to drive an automobile on the streets, just as much right as a man has to drive a buggy in it, or to cross it on foot, but wherever

any man uses a dangerous machine, he must guard the exercise of that right with a proper care and due regard for the lives and safety of people who have an equal right to be upon the streets.''

There was no error in the charge as given, which does not assume that defendant was using the street as a speedway, and although an automobile may not be a dangerous machine when not in operation, it evidently becomes so to such an extent when operated without care on the crowded streets of a city, that there could have been no error in this instruction. This was a racing car of high power, stripped, and was being operated recklessly as the jury found, at a high and unlawful rate of speed, at a place where the presence of persons alighting from the car, pedestrians and others crossing the street, should have been anticipated. *Allen* v. *Bland,* 168 S. W. (Tex.) 35.

(5)    Neither did the court err in telling the jury that it was the duty of the defendant to keep his machine under such control as to check the speed or stop it absolutely if necessary to avoid injury to others where danger could reasonably be expected or was apparent.  The defendant was driving his racing car on the city street at a high rate of speed, past a street car standing for allowing passengers either to get on or off, in violation of the city ordinances, and where he could have reasonably expected that some one might come from behind the street car from out of his sight into a place of danger from his machine.  He made no effort to stop his automobile, swerved it in next to the street car, to avoid it is true, a collision with a delivery wagon on the right, but necessarily where he could not see a pedestrian coming from behind the car.  He made no effort, according to his own statement, to check the speed of his car until it was apparent that it would collide with the delivery wagon, notwithstanding he could see both the wagon and the standing street car, before he came near enough to endanger the safety of any one crossing the street at the place.  *Gregory* v. *Slaughter,* 8

L. R. A. (N. S.) (Ky.) 1228; *State* v. *Campbell*, 18 Ann. Cas. 236.

(6) The defendant, it is true, was not well acquainted with the city, nor its streets, but he was accustomed to driving an automobile, and if the State's testimony be true, he was driving the car at the time of the accident with reckless abandon and wanton disregard of the rights of others upon the street and without care as to their safety. It is not claimed that he had any intent to injure his victim, the deceased, and he has doubtless suffered much anguish of mind because of the unfortunate occurrence in which he caused his death, but the fact remains that he drove his racing car at great speed past a standing street car, beyond and behind which he could not see, and killed the man who was stepping out from behind the street car, because he was not able to sooner see him nor stop his car to prevent the injury.

We find no prejudicial error in the record, and the judgment is affirmed.