Allen A. RONE, Administrator of
The Estate of Ricky Lee RONE *v.*
Mildred G. MILLER, Administratrix of
The Estate of Edward Lee FLOYD

74-274                    520 S.W. 2d 268

Opinion delivered March 10, 1975

*Daggett, Daggett & Van Dover,* for appellant.

*Roscopf & Epes, P.A.,* by: *Charles B. Roscopf,* for appellee.

FRANK HOLT, Justice. Appellee, administratrix of the estate of Edward Lee Floyd, brought a wrongful death action against appellant, administrator of the estate of Ricky Lee Rone. A jury awarded appellee $17,071.04. From the judgment on that verdict comes this appeal.

In answer to appellee's complaint, the appellant denied that Ricky Lee Rone was the driver of the vehicle and alleged the affirmative defenses of joint venture, assumed risk and that the contributory negligence of the decedent equalled or

exceeded that of appellant's intestate. To substantiate these affirmative defenses, the appellant proffered evidence as to who drove the car, their activities, and the manner in which the automobile was driven preceding the accident. The court excluded the evidence. Appellant contends this was error and we agree.

There were no eye witnesses to the fatal accident in which appellee's decedent, appellant's decedent and another youth were instantly killed. In chambers preceding the trial, appellant's counsel made a proffer of proof in which he stated:

I had purported to show that the fourth boy in the car, Allen Rone, was with these boys from approximately 8 o'clock until 12 to 12:30 that night; that during the course of the evening I would offer testimony from Allen Rone as to what they did, where they went, the manner in which the car was driven, who drove the car, speeds at which the car was driven, and that there were no protests by any passengers in the car as to the way the car was driven. There were no requests to be let out, and there were no admonitions to the driver during this course of time. **** [t]hat the car was driven in excessive speeds on numerous occasions, that the car was skidded to stop, jack rabbit starts, spinning out, and that the plaintiff's decedent was the principal driver of the car and principal person driving it in such a manner; that by the testimony of Gary Shelton, the defendant would show that at approximately 2:45 to 3 a.m., on the morning of September 2, 1972, the morning of the accident, the plaintiff's decedent, Eddie Floyd, drove through the Town of Elaine, through the main streets of Elaine at a high rate of speed, slammed his brakes on and slid to a stop in the main street of town, revving up his engine and then spun out in a direction toward the Town of Lambrook; that Gary Shelton, then taking this as a signal to want to race, started his car and drove behind in an attempt to catch Eddie Floyd at speeds of 75 to 80 to 85 miles per hour; that he was unable to do so, and that he lost sight of the Atkinson vehicle in that it outran him; that he then returned to Elaine about 3

o'clock, proceeded toward his home at Oneida, and when he made the turn at Old Town Lake to go to Oneida, the car passed him and the wreck ensued approximately three miles from that corner.

When the court refused the proffer of proof, the appellant objected and the court agreed there would be continuing objections throughout the trial. Consequently, appellant made no further effort to adduce the proffered proof.

In *Hooten* v. *DeJarnatt*, 237 Ark. 792, 376 S.W.2d 272 (1964), we said:

. . . . [w]here the sequence of events is not too remote in distance and time, then the preceding act or occurrence is admissible for the purpose of showing one continuing act or the probability that the circumstances of the preceding occurrence continued to exist at the time of the subsequent occurrence. Therefore, such preceding occurrence has some relation to the actual mishap.

Testimony as to acts of driving was permitted to show a course of conduct. See *Scott* v. *Shairrick*, 225 Ark. 59, 279 S.W.2d 39 (1955); *Madding* v. *State*, 118 Ark. 506, 177 S.W. 410 (1915); and *Carden* v. *Evans*, 243 Ark. 233, 419 S.W. 2d 295 (1967). In the case at bar, we are of the view that the rejected proffer of evidence was relevant to the affirmative defenses of joint venture, assumption of risk and the degree of contributory negligence by appellee's decedent. The proffered evidence tended to show that the appellee was aware, as a joint participant, of the asserted dangerous and reckless driving that had occurred during the evening and made no protests.

Appellant next contends that the trial court erred in refusing to permit evidence that Floyd, appellee's decedent, had been drinking during the evening and was intoxicated at the time of the accident. The proffered testimony of Allen Rone was that Floyd purchased and drank a six-pack of beer and ½ pint of whiskey during the evening. Further, a police officer would testify that the results of blood alcohol tests made on Floyd showed a content of 0.15%. The trial court

also refused appellant's requested instructions pertaining to intoxication and a passenger's standard of care.

Appellee recognizes that a passenger in an automobile must use ordinary care for his own safety. Appellee contends, however, that it would be speculative for the jury to find that Floyd's intoxication was a proximate cause of his death. In *Elmore, Admr.* v. *Dillard*, 227 Ark. 260, 298 S.W.2d 338 (1957), we cited 65A C.J.S. § 152:

> While an occupant of a vehicle is not required to exercise the same watchfulness as the driver, it is his duty to exercise ordinary care, including a reasonable use of his faculties of sight, hearing, and intelligence, to observe and appreciate danger or threatened danger of injury, and if he fails to do so, and such failure contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence.

In the case at bar, although evidence of intoxication *alone* would not necessarily be sufficient to show that Floyd's negligence, as a guest, was the proximate cause of his death, it is, however, a circumstance to be considered by the jury along with all the other facts and circumstances as to whether Floyd exercised ordinary care as a passenger for his own protection. Appellant, of course, would be entitled to appropriate instructions based upon the evidence which actually is adduced in this respect.

Appellant next asserts the court erred in admitting a witness' testimony as to the speed of the vehicle, which he did not see in motion and was based solely upon the sounds made by the vehicle. Willie Shelton, who lives adjacent to the highway and near the crash site, was in bed and awake the night of the accident. His attention was attracted when the lights of the car "flashed in" his bedroom window. When asked, "[W]hen you first heard it what did it sound like?" Shelton responded "[L]ike somebody was overspeeding, and they was, to my knowledge." Further, it sounded like the car was being driven "real fast" because of the "noise of the engine." "Sounded like somebody had cranked up and was racing the engine. That is just the way it sounded." Several of

the cases cited by appellant hold such testimony inadmissible when the witness attempts to establish the speed in terms of miles per hour. Significantly, here the witness merely stated that from the sound of the engine it was "overspeeding" or being driven "real fast."

In *Pierson* v. *Frederickson*, 102 N.J. Super. 156, 245 A.2d 524 (1968), where the court approved similar testimony, it was aptly stated:

> Visual perception is not the exclusive sensory means of gaining personal knowledge; it can also be attained by means of auditory perception.

Likewise, in the case at bar, we are of the view that the testimony was admissible.

Appellant next contends the evidence was insufficient that Rickey Rone was driving the car and, therefore, the court erred in refusing appellant's motion for a directed verdict. We cannot agree. We affirm if there is any substantial evidence, viewed in the light most favorable to appellee, to support the verdict. *Members Mutual Ins. Co.* v. *Blissett*, 254 Ark. 211, 492 S.W.2d 429 (1973). The evidence shows that the car did not turn over as it skidded towards a tree. A witness who ran to the scene of the crash testified that none of the occupants appeared alive. They remained in the same positions until the police arrived. An officer testified that Ricky Rone's feet were pinned down by the emergency brake and the firewall. Of the three individuals in the car, there was evidence that he was the nearest to the driver's side. When viewed most favorably to the appellee, these physical facts constitute substantial evidence from which the jury could find Rickey Rone was the driver of the car.

Neither can we agree that the trial court should have directed a verdict because there was no substantial evidence of willful and wanton misconduct as is required by our guest statute. Ark. Stat. Ann. § 74-913 (Repl. 1957). In *Splawn, Admx.* v. *Wright*, 198 Ark. 197, 128 S.W.2d 248 (1939), we said:

This court has laid down the rule that in order to sustain a recovery under our Guest Statute, *supra*, the negligence must be of a greater degree than even gross negligence, that it must be willful or wanton.

We quoted with approval:

'To be willfully negligent, one must be conscious of his conduct, and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.' . . . .'Willful negligence means a failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.'

This issue must be resolved from the facts and circumstances of each individual case. *McCall* v. *Liberty*, 248 Ark. 618, 453 S.W.2d 24 (1970).

The accident occurred at approximately 3 a.m. The speed limit on the level highway was 60 miles per hour and a sign warned drivers of the existence of an "S" curve. The weather was clear. Apparently, the first turn was negotiated. However, the car was in the southbound lane of the last turn traveling north when the car started to skid. The skid marks show the car went 114 feet then left the highway and skidded another 131 feet down a ditch. At this point the car slid another 84 feet across a side road and again entered the highway. The car slid sideways down the highway another 158 feet and off the highway on to an embankment. The car continued to slide sideways down the embankment 68 feet until it hit a tree. One witness testified that the car was "wrapped" around the tree to such an extent that one could almost touch the front and rear bumpers with outstretched arms. Photographs show the mangled condition of the car bent into a horseshoe shape around the tree. The three occupants were killed instantly.

Appellant argues that speed alone does not constitute sufficient evidence of willful and wanton negligence. In the case at bar, there are elements other than speed. A sign on

the highway warned the driver about the "S" curve he was approaching. It appears that appellant's decedent lived in the vicinity and had some familiarity with the highway. The car was on the wrong side of the road when the driver lost control. Furthermore, the late hour is a factor which the jury could consider. In *McCall* we found substantial evidence based on the following elements: abruptness of the curve, familiarity with the curve, tremendous speed, the late hour and appellant's drinking. As pointed out by the appellee, the only factor missing here is a drinking driver since the evidence is that appellant's decedent was not drinking. We have said that wanton conduct is:

> .... [a] mental attitude shown when a person, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, proceeds into the presence of danger, with indifference to consequences and with absence of all care.

*Carden* v. *Evans*, 243 Ark. 233, 419 S.W.2d 295 (1967). In *Turner* v. *Rosewarren*, 250 Ark. 119, 464 S.W.2d 569 (1971), the court noted that drinking was not present in that case as in the *McCall* case; however, we said ".... racing would be an equivalent circumstance to show an attitude of arrogant or heedless recklessness." The facts in the case at bar present elements from which a jury might find "a conscious failure to perform a manifest duty in reckless disregard of natural or probable consequences to the life or property of another." *McCall* v. *Liberty, supra.*

Appellee asserts that the guest statute is unconstitutional. This contention was determined adversely to appellee recently in *White* v. *Hughes*, 257 Ark. 627, 519 S.W. 2d 70 (1975).

Appellant also asserts that the court erred in refusing to instruct the jury as to assumption of risk and joint enterprise. This argument is based primarily upon the admissibility of the proffered proof of previous reckless driving and intoxication, which we have previously discussed in points one and two. Appellant would be entitled to appropriate instructions

upon these affirmative defenses whenever evidence is adduced to justify them.

Appellant's final contention relates to the trial court giving the A.M.I. (Civil) 901 "rules of the road" instruction. Appellant does not object to the instruction other than it be modified. He asks that it be modified by striking the last paragraph or in the alternative by adding at the end of the paragraph ",but which may not necessarily be willful and wanton negligence." We think the proffered addition is correct except the word "misconduct" should be used instead of "negligence." See Ark. Stat. Ann. § 75-915 (Repl. 1957); *Harkrider* v. *Cox*, 230 Ark. 155, 321 S.W.2d 226 (1959); *Spence* v. *Vaught*, 236 Ark. 509, 367 S.W.2d 238 (1963); and *Shearer, Adm'r* v. *Newson, Spec. Adm'r*, 250 Ark. 33, 463 S.W.2d 642 (1971). Otherwise, in the case at bar, we can find no merit in the requested modifications.

Reversed and remanded.