The margin numbers to the right:
| 78 | 77 |
| 109 | 349 |
| 78 | 77 |
| 119 | 467 |
| 78 | 77 |
| 148 | 256 |
| 78 | 77 |
| 160 | 569 |

THE STATE v. EMERY, *Appellant.*

**Manslaughter in the Fourth Degree.** Under the statute, (R. S. 1879, § 1250,) the shooting of a human being unintentionally, but through negligence in handling a fire-arm such as to indicate carelessness or recklessness incompatible with a proper regard for human life, is manslaughter in the fourth degree.

*Appeal from Moberly Common Pleas Court.*—Hon. G. H. BURCKHARTT, Judge.

AFFIRMED.

*Reed & Hall* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

SHERWOOD, J.—The defendant was indicted for murder in the second degree. On trial he was found guilty of a less offense, to-wit, manslaughter in the fourth degree, and his punishment assessed at two years in the penitentiary. The evidence shows that the defendant, within a few moments before the fatal occurrence, had been brandishing a self-cocking and loaded revolver in his saloon, endangering the lives of those who were there. He was warned of the danger of such actions, and once, when his pistol dropped on the counter, a bystander picked it up and put it in his pocket; but on defendant's promise to put the pistol up, it was returned to him. In a few moments afterward, however, while flourishing the pistol again, it was discharged, resulting in the death of Hammond, a friend, it seems, of the defendant, who had just come into the saloon.

The statute provides: "Every other killing of a human being by the act, procurement or culpable negligence of another which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." R. S. 1879, § 1250.

The first and sixth instructions given for the State, correctly declare the law, and taken together, announce this doctrine: That in order to find a person guilty of manslaughter in the fourth degree, it is sufficient to show that the shooting, though unintentionally done, was the result of negligence in handling the fire-arm, indicating on the part of such person a carelessness or recklessness incompatible with a proper regard for human life.

Mr. Bishop says: "There is little distinction, except in degree, between a positive will to do wrong and an in-

difference whether wrong is done or not; therefore, carelessness is criminal." Thus, if a person by careless or furious driving unintentionally run over another and kill him, it will be manslaughter; or, if one in command of a steamboat, by negligence or carelessness unintentionally run down a boat and a person therein is thereby drowned, the act is manslaughter. 1 Bishop Crim. Law, §§ 313, 314. Or if a person points a gun without examining whether it is loaded or not, and it happens to be loaded and death results, he is guilty of negligence and manslaughter. *Reg. v. Jones*, 12 Cox C. C. 628. So, also, if death ensue from discharging a loaded gun at night into the public highway, whether any person were in sight or not, the act being one of gross carelessness, calculated to endanger the lives of persons passing along the street. *People v. Fuller*, 2 Parker Crim. Rep. 16. In another case a revolver was found in the road with one load in it. Six months thereafter repeated attempts failed to discharge it or to remove the load. Over four years thereafter the defendant, in sport, endeavoring to frighten a woman with the revolver, it was discharged and killed her, and the defendant was held rightly convicted of manslaughter. *State v. Hardie*, 47 Iowa 647. These authorities abundantly support the instructions we have commented on; but none of them show such a degree of carelessness and disregard of consequences as that exhibited by the facts in evidence in this record.

But it is insisted that the point whether the killing was accidental was not submitted to the jury by the instructions. This position is the result of a gross misconception of the sixth instruction already noticed. By it the jury were told if the shooting "was not intentionally done, but was the result of defendant's negligence," etc. Thus, in effect, telling the jury that the shooting was accidentally done; *vide* Webster Dict., "Intentional." It is also insisted that the statute only makes "culpable" negligence punishable when resulting in homicide. But such negligence as the defendant exhibited was culpable or criminal, both in

the sense of the lexicographers and of the law writers. "Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man would not do under all the circumstances surrounding each particular case." Shearman & Redfield on Neg., § 7. It was unnecessary that the instructions should contain the word "culpable;" it was sufficient that they conveyed to the minds of the jury other and equivalent words expressive of the idea of culpability. As the instructions given for the State correctly declare the law on the subject of negligence and its punishment, it becomes unnecessary to consider other instructions asked on the same subject by the defendant.

We are not aware that any one heretofore in this State has been prosecuted for manslaughter upon circumstances similar to those which the record presents. And yet, if we may judge from the reports of the daily press, instances are not infrequent within our borders where human lives are sacrificed by playful carelessness in handling fire-arms.

Finding no error in the record, we affirm the judgment. All concur.