# THE STATE v. HARRIS H. HORNER, Appellant.

### Division Two, November 30, 1915.

1. **MANSLAUGHTER: By Automobile Driver: Sufficient Evidence.** Testimony that defendant was driving his automobile at a speed of fifteen to twenty miles an hour, at an intersection of two streets; that the view between him and the deceased pedestrian was unobstructed; that when deceased was ten or fifteen feet out in the street, after having left the sidewalk at the street intersection, and was walking in a straight direction, he was struck by the automobile and dragged twenty-five feet or more; that no warning or signal was heard; that deceased was apparently oblivious of the approach of the automobile until it was upon him; that going six miles an hour, as defendant testified, it could have been stopped in three or four feet, and that when defendant first saw deceased he was within three feet of him, and instead of stopping his car he swerved it in an effort to avoid hitting him, is sufficient evidence to support a verdict of manslaughter in the fourth degree based upon culpable negligence.

2. ――――: ――――: **Culpable Negligence: Definition.** An instruction defining "culpable negligence" as the failure to exercise "the highest degree of care which a very prudent and ordinarily skillful driver of an automobile would have used under the same or similar circumstances," and authorizing a conviction if the jury found that the death of the pedestrian at a street intersection resulted from the failure of defendant to exercise such "highest degree of care," is erroneous.

3. ――――: ――――: **Definition in Civil Code.** The statute (Laws 1911, pp. 330-331) authorizing a recovery of damages in a civil action for a failure to exercise "the highest degree of care," has reference to civil actions only, and in no sense is to be considered a part of the criminal code.

4. ――――: ――――: **Definition in Criminal Action.** Culpable negligence, as used in the statute (Sec. 4468, R. S. 1909) making the killing of a human being by the culpable negligence

of another manslaughter in the fourth degree, is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do, under all the circumstances surrounding each particular case.

Appeal from the St. Louis City Circuit Court.—*Hon. Thomas C. Henning,* Judge.

REVERSED AND REMANDED.

*John A. Gernez* for appellant.

(1) The evidence upon the part of the State was inadequate to support the allegations of the information and defendant's requested instruction at the close of the State's case should have been granted. (2) The definition of "culpable negligence" given in the instructions is erroneous and vitiates all the instructions. Wharton on Homicide, sec. 445; State v. Emery, 78 Mo. 77; Shearman & Redfield on Negligence, sec. 7; Scott v. Crums, 2 S. C. 537.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The evidence was amply sufficient to sustain the verdict. State v. Watson, 216 Mo. 420; State v. Emery, 78 Mo. 77; Laws 1911, sec. 8, pp. 326-327; Karle v. Railroad, 55 Mo. 476; Stotler v. Railroad, 200 Mo. 107; Beford v. Johnson, 82 Ind. 426; Fredt v. Wheeler, 70 Minn. 161; Div. 528, 8 Am. Rep. 354. (2) Does the instruction correctly declare the law? State v. Landgraf, 95 Mo. 103; State v. Campbell, 82 Conn. 671; Kelley's Crim. Law & Prac., sec. 506; 3 Greenleaf's Evidence, sec. 129; Reg. v. Longbottom, 3 Co. C. C. 1. c. 440; Laws 1911, sub. 9, sec. 12, p. 330; Laws 1911, sec. 8, p. 326; Hays v. Hogan, 180 Mo. App. 242; 21 Cyc. 766; Anderson v. State, 27 Tex. App. 177.

WILLIAMS, C.—The information in this case charges defendant with manslaughter in the fourth degree under section 4468, Revised Statutes 1909, based upon the alleged culpable negligence of defendant in operating an automobile over the public streets of the city of St. Louis in such a manner as to run down and kill one Russell K. Cooper. Upon a trial had in the circuit court of the city of St. Louis, defendant was convicted and his punishment assessed at a fine of five hundred dollars. The evidence upon the part of the State tended to show that the death of the deceased occurred about 3:30 p. m., July 31, 1913, at the intersection of Fourth Street and Washington Avenue. At the hour of the accident there was very little travel on the street at that point. A west-bound street car had stopped just east of the intersection of these two streets for the purpose of taking on or letting off passengers. The deceased left the sidewalk, at the northeast corner of the street intersection and was walking rapidly, in a southwesterly direction, toward the southwest corner of the intersection. When he was some ten or fifteen feet out in the street, the automobile, which struck him, approached from the south, coming "fast." One witness estimated the speed at from fifteen to twenty miles an hour. The witnesses for the State testified that they did not hear any signal or warning given by the defendant who was driving the automobile. About this time, the street car started across the street but only moved about six feet into the street before it came to a stop. It is clearly inferable from the State's evidence that the view between deceased and defendant as defendant approached near the intersection was unobstructed. Deceased was at the center of the street where the street car tracks crossed when he was struck by the automobile. The defendant in driving the automobile undertook to swerve the machine to the left to avoid striking the deceased, but the right hand lamp

struck the deceased, knocking him down under the automobile, and he died in a short time thereafter. Deceased was apparently oblivious of the approach of the automobile until the same was upon him. Deceased's body was found lying about twenty-five feet from the place where the automobile struck him and the automobile was stopped about thirty-five feet from the point of collision.

The defendant testified in his own behalf, stating that he approached the intersection of the two streets running at a rate of about six miles per hour and the street appearing to be clear he sounded his horn, and started to cross the street on the right-hand side, and, as he approached the center of the intersection, deceased came running around the front of the street car which had started up. When defendant first saw deceased he was within three feet of the defendant's machine. Defendant yelled at him and swerved the machine to the left in an attempt to avoid striking him. That the car was a left-hand drive and that he did not know he had struck the deceased until he had crossed the street and looked back. He thereupon hastened to the side of the wounded man and helped place him in a conveyance so that he could be taken to a hospital. There was evidence tending to show that this automobile, going six miles per hour, could be stopped in a distance of three or four feet.

An appeal was duly taken by the defendant, and he now urges as grounds for reversal, 1st, the insufficiency of the evidence, and, 2nd, the error of the court in giving certain instructions.

I. Appellant insists that the evidence was insufficient to support the verdict. We are unable to agree with this contention. Under former rulings of this court, we are of the opinion that the evidence upon the part of the State was clearly sufficient to justify the submission

**Sufficient Evidence.**

of the question of defendant's guilt to the jury. [State v. Watson, 216 Mo. 420, l. c. 435; State v. Emery, 78 Mo. 77.]

II.   The instructions given by the court to the jury defined the term "culpable negligence" as the failure to exercise "the highest degree of care which a very prudent and ordinary skilful driver of an automobile would have used under the same or similar circumstances" and authorized a conviction if they found that the death resulted from the failure of defendant to use said "highest degree of care."

**Culpable Negligence.**

This was clearly erroneous.   It is true that the Act of 1911 (Laws 1911, pp. 330-331) makes the "owner, operator or person in control of an automobile" respond in civil damages for any injury resulting from the failure to use "the highest degree of care" as by said act defined, but said act has reference only to civil actions, and is in no sense to be considered a part of the criminal code, and, therefore, has no part in fixing the standard of care required in measuring criminal responsibility.   This prosecution is based upon section 4468 of our criminal code (Sec. 4468, R. S. 1909), and it is to that act we must look for the standard of care, the violation of which is to fix the criminal liability.   Said section reads:

"Every other killing of a human being by the . . . culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

The term "culpable negligence" as used in the above statute has been by this court defined as follows:

"Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man

266Mo8

would not do under all the circumstances surrounding each particular case." [State v. Emery, 78 Mo. 77, l. c. 80.]

To the same effect are the following authorities: Wharton on Homicide (3 Ed.), sec. 445; 3 Greenleaf on Evidence (16 Ed.), par. 129; Kelley's Crim. Law & Practice (3 Ed.), sec. 511, page 454.

It therefore follows that, because of the erroneous instructions given, the judgment must be reversed and the cause remanded. It is so ordered.

*Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WIL-LIAMS, C., is adopted as the opinion of the court. All the judges concur.