## THE STATE v. GUS WINKLER, Appellant.

Division Two, June 5, 1925.

1. **CULPABLE NEGLIGENCE:** Reckless Driving of Automobile. The driver of an automobile who drives it recklessly over a public street and thereby strikes a pedestrian and inflicts such wounds and great bodily harm as to endanger life, may be prosecuted for felonious culpable negligence under Section 3264, Revised Statutes 1919.

2. ———: Definition. An instruction which defines culpable negligence as "the omission on the part of one person to do some act, under given circumstances, which a reasonably careful and prudent man would do under like circumstances, or the doing of some act, under given circumstances, which a reasonably and ordinarily careful and prudent man, under like circumstances, would not do, by reason of which omission or act another person is directly injured in life or bodily safety," is not objectionable.

3. **DEMURRER: Overruled: All Evidence Considered.** Defendant waives his right to insist that his demurrer to the evidence offered at the close of the State's case should have been sustained, by putting in evidence in his own behalf. If he does not stand on his demurrer, but puts in evidence of his own after it is overruled, it becomes the duty of the court and jury to pass upon the evidence as a whole.

4. **CULPABLE NEGLIGENCE: Automobile: Reckless Driving: Sufficient Evidence.** Numerous small girls, guided by an older woman, were crossing a much traveled highway at five o'clock of a December evening. Defendant testified that when he was two hundred feet from the point of the accident he saw some of them near the middle of the avenue. There was evidence for the State to the effect that the street was lighted; that defendant gave no danger signals; that he rapidly drove his car over one of them, and badly injured her; and that, instead of traveling slowly, with his automobile under control, it ran fifty feet beyond the place of injury before it stopped. *Held*, that these facts show that defendant was not only guilty of criminal negligence, but that he proceeded over the crossing without regard to the rights of the helpless children.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 2614, p. 1117, n. 84. Municipal Corporations, 28 Cyc. pp. 916, n. 52 New; 917, p. 54, 56 New. Negligence, 29 Cyc. p. 422, n. 30.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

AFFIRMED.

*Harry F. Russell* for appellant.

(1) Prejudicial error was committed in the instruction defining culpable negligence. Kasle v. United States, 147 C. C. A. 561; Peterson v. United States, 130 C. C. A. 400; Konda v. United States, 166 Fed. 93; Case Note, 22 L. R. A. (N. S.) 833; State v. Ebbeler, 222 S. W. 396; Ex parte Taft, 225 S. W. 461. (2) Prejudicial error was committed in the instruction defining "reasonable" and "ordinary care" and "caution." Authorities above. (3) Prejudicial error was committed in overruling defendant's demurrer.

*Robert W. Otto,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) The court did not err in its definition of culpable negligence as defined in Instruction 2. This exact instruction has been approved in numerous decisions of the Supreme Court. State v. Coulter, 204 S. W. 5; State v. Miller, 234 S. W. 813; State v. Emery, 78 Mo. 77; State v. Horner, 266 Mo. 109; State v. Watson, 216 Mo. 420; State v. Grote, 109 Mo. 345; State v. Henson, 106 Mo. 66. The cases relied upon by appellant are cases involving statutes which make the question of intent or the question of knowledge one of the essential elements of the crime. In this case the question of intent or knowledge is immaterial, as the appellant may be convicted regardless of the question of his intent to violate the law. Sec. 3264, R. S. 1919; cases supra. (2) The court committed no error in overruling defendant's demurrer at the close of the State's case, and if the court committed an error in overruling such demurrer such error is not now reviewable. The appellant offered a demurrer at the close of the State's evidence. After this demurrer was overruled the appellant offered testimony in his own behalf, and failed to renew his demurrer to the evidence at the close of the whole case. In view of appellant's failure to renew the demurrer at the close of all the evidence the ruling on the demurrer in the first instance is not now reviewable. State v. Starling, 207 S. W. 767. (3) The evidence introduced in the trial was sufficient to authorize the court to submit the case to the jury. Where there is substantial evidence of guilt the Supreme Court will not overrule the action of the trial court. State v. Selleck, 199 S. W. 129; State v. Underwood, 263 Mo. 685; State v. Starling, 207 S. W. 767.

RAILEY, C.—On January 19, 1923, the Assistant Circuit Attorney of the City of St. Louis, Missouri, filed in the circuit court of said city his verified information

against said defendant, which, omitting caption and verification, reads as follows:

"Roy A. Fish, Assistant Circuit Attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows: That Gus Winkler on the 17th day of December in the year of our Lord one thousand nine hundred and twenty-two, at the city of St. Louis aforesaid, was then and there operating, driving and in charge and control of a certain automobile, moving and being propelled upon, over and along Washington Avenue, a public highway of and in the city of St. Louis and State of Missouri; and that the said Gus Winkler while so operating, driving and in charge of said automobile as aforesaid, then and there carelessly, recklessly, feloniously with culpable negligence did drive, propel and force said automobile with great force and violence against, upon and over the body of one Emma O'Dell, then and there and thereby violently casting and throwing the said Emma O'Dell to and upon the ground, and the said Gus Winkler did then and there feloniously and with culpable negligence drive, propel and force said automobile against, upon and over the head and body of the said Emma O'Dell, and then and there and thereby carelessly, recklessly, feloniously and with culpable negligence did give unto the said Emma O'Dell in the manner and form and by the means aforesaid, numerous bruises, wounds, and injuries upon the head and body of the said Emma O'Dell, whereby the life of the said Emma O'Dell was thereby endangered; contrary to the form of the statute in such cause made and provided, and against the peace and dignity of the State."

Upon a trial before a jury on October 17, 1923, defendant was convicted of the crime charged in the information and his punishment was assessed at nine months' imprisonment in the city jail, and a fine of one hundred dollars. A timely motion for a new trial was filed and

overruled.   Thereafter defendant was sentenced, and judgment rendered, from which he appealed to this court.

After reading the record and briefs, we have reached the conclusion that the statement of the case made by the State is substantially correct and, with a few changes herewith, we adopt the same as follows:

The evidence shows that on the 17th day of December, 1922, some forty children of the Children's Home of St. Louis attended a party at the home of the Young Women's Christian Association located near the intersection of Olive Street and Pendleton Avenue in said city; that the party began at two o'clock in the afternoon and ended at five o'clock in the afternoon; that the children were in charge of their matron, who was Mrs. Ada Wooden; that at about five o'clock in the afternoon Mrs. Wooden, in company with the children, started on their return trip home; that in making their journey home they started north along the east side of Pendleton Avenue and walked north one block to the south line of Washington Avenue; that upon arriving at the south line of Washington Avenue, they were compelled to stop for a few minutes before passing across Washington Avenue on account of the dense traffic at that point; that after waiting a few minutes the matron started north across Washington Avenue with the children following her in a long column, the children marching in double file with the space of something like eighteen inches between each pair of children; that the injured girl was leading two smaller children, one on each side of her, and several pairs of children separated the injured girl from Mrs. Wooden, the matron; that as Mrs. Wooden arrived at or near the center of Washington Avenue, she heard loud screams among the children in the rear and, upon looking around, discovered an automobile plowing through the line of children and dragging beneath it the injured girl, Emma O'Dell.

There was substantial testimony offered on the part of the State to the effect that no alarm was given by the approaching automobile prior to the accident; that Wash-

ington Avenue was well lighted at the point where the accident occurred and at the time the accident occurred; that the automobile traveled a distance of fifty feet after the collision occurred. Several witnesses for the State testified that at the time the children started across the street there was a car coming toward them from the west about one block distant, and, while no one positively testified this was the identical car which caused the injury to Emma O'Dell, yet such is the only reasonable conclusion to draw from all the testimony. The defendant admitted at the trial that while his car was 200 feet west of Pendleton Avenue he saw these children on Washington Avenue out in the middle of the street.

The evidence is undisputed to the effect that the injured girl was knocked down by the automobile and dragged for a considerable distance; that she suffered a concussion of the brain; that she was semi-conscious for two or three days; that she received a scalp wound on the right side of the head where a large bump also formed, and that she also received numerous scratches on her hands and wrists and other portions of the body; that she was confined in the hospital for some eight or ten days.

The real issues in the case may be stated as follows: The evidence for the State tends to show that the children were marching in a solid and continuous column with the line extending from the curb on the south side of Washington Avenue to a point at or near the center of Washington Avenue, a distance of from seventeen to twenty feet; that the car sounded no alarm previous to the collision; and that it ran at least a distance of fifty feet after the collision and before the car stopped. The evidence for the defendant tended to show that there was an open space between the south line of the curb on Washington Avenue and a group of children standing near the center of Washington Avenue; that the children were not marching in a solid and continuous column, but that some of them were standing on the sidewalk at the curb on the south side of Washington Avenue, and the rest of the children were standing at a point near the

center of Washington Avenue; that the defendant approached the east line of Pendleton Avenue at a slow rate of speed, and that just before he reached the east line of Pendleton Avenue some of the children who had been standing on the sidewalk on the south side of Washington Avenue suddenly stepped out ·into Washington Avenue and started north to join the children in the center of the avenue; that as soon as the defendant saw the children step into Washington Avenue he sounded his horn and attempted to stop his car, but was unable to do so prior to the collision; that his car was driving slowly at all times, and that he stopped the car within a distance of six; or eight feet after the collision occurred.

The instructions and rulings of the court, as far as necessary, will be considered later.

I. The information heretofore set out is not assailed by motion in arrest of judgment, nor in appellant's brief. It is based on Section 3264, Revised Statutes 1919, which reads as follows:

"If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered, by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months, or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months, or by fine not less than one hundred dollars."

*Statute.*

The authorities hereafter cited in considering the instructions, clearly sustain the validity of the above information.

State v. Winkler.

II.　Appellant charges the court with error in the giving of instructions numbered one and two, which read as follows:

"1.　If, upon consideration of all the evidence in the case, in the light of the court's instructions, you

Correct Instructions.

find and believe from the evidence that at the city of St. Louis and State of Missouri, on the 17th day of December, 1922, or at any time within three years next before the filing of the information herein, the defendant, Gus Winkler, was then and there in charge of, and control of, and operating and managing a certain motor vehicle, to-wit, an automobile, moving and being propelled upon, over and along Washington Avenue, a public highway of and in the city of St. Louis, and State of Missouri, and that the defendant, Gus Winkler, did then and there feloniously, carelessly, recklessly and with culpable negligence, so operate and manage said automobile and the machinery and the appliances thereof, that he did then and there drive, control and manage said automobile so as to drive, propel and force said automobile with great force and violence against, upon and over the body of one Emma O'Dell, then and there and thereby violently casting and throwing the said Emma O'Dell to and upon the ground, and thereby causing her to suffer numerous bruises, wounds and injuries upon the head and body of said Emma O'Dell, whereby the life of the said Emma O'Dell was thereby endangered, then you will find the defendant guilty, as charged in the information, and unless you so find the facts to be you will acquit the defendant.

"If you find the defendant guilty, you will assess his punishment at imprisonment in the penitentiary for a term of not less than two years nor more than five years, or in the city jail not less than six months and not more than one year, or by both a fine of not less than one hundred dollars and imprisonment in the city jail not less than three months, or by a fine of not less than one hundred dollars.

"2. 'Culpable negligence,' within the meaning of the law, is the omission on the part of one person to do some act, under given circumstances, which a reasonably careful and prudent man would do under like circumstances; or the doing of some act, under given circumstances, which a reasonably and ordinarily careful and prudent man, under like circumstances, would not do, by reason of which omission or act another person is directly injured in life or bodily safety.

"In this case, before you can find the defendant guilty of the charge contained in the information, you must find and believe from all the evidence, and beyond a reasonable doubt, that the bruising, wounding and injuring of the said Emma O'Dell (if you find that she was bruised, wounded and injured), was due solely and directly to some such act of culpable negligence on the part of the defendant, and of the defendant alone."

None of the other instructions given by the court are complained of in the motion for a new trial.

The above quoted instructions are fully sustained by numerous decisions of this court, some of which are as follows: State v. Beckham, 267 S. W. 817; State v. Weisman, 256 S. W. 740; State v. Miller, 234 S. W. 813; State v. Coulter, 204 S. W. 5; State v. Horner, 266 Mo. 109; State v. Watson, 216 Mo. 420; State v. Grote, 109 Mo. 345; State v. Henson, 106 Mo. 66; State v. Emery, 78 Mo. 77.

III. The authorities cited in appellant's brief do not discuss or consider the law in respect to culpable negligence. As a sample of the cases cited, we call attention to our ruling relied on in State v. Ebeler, 283 Mo. 57, 222 S. W. 396. In the last named case, the defendant was charged with having received a stolen automobile, knowing the same to have been stolen. The instruction which we condemned, read as follows:

*Culpable Negligence.*

"By the term 'knowing' that the property was stolen is not meant absolute personal and certain knowledge on

the part of the defendant that the property mentioned in the indictment had been stolen, but such knowledge and information in his possession at the time he received the same, if you believe he did receive it, as would put a reasonably prudent man, exercising ordinary caution, on his guard and would cause such a man exercising such caution, and under circumstances which you believe defendant received the property, to believe and be satisfied that the property had been stolen.''

We are of the opinion, that our rulings in the Ebbeler case, and kindred authorities, are without application to the present controversy. The authorities heretofore cited fully sustain the validity of the instructions given in this case.

IV. It is contended by appellant that prejudicial error was committed by the court in overruling his demurrer to the evidence at the conclusion of the State's case in chief. He failed to stand upon his demurrer, and waived his right to raise that issue here, by putting in evidence his own testimony, as well as that of a number of other witnesses. It then became the duty of the court and jury to consider and pass upon the evidence as a whole. [Ehrlich v. Mittelberg, 252 S. W. (Mo.) l. c. 678; Kaemmerer v. Wells, 252 S. W. (Mo.) l. c. 732; State v. Hembree, 242 S. W. (Mo.) l. c. 913-14; State v. Mann, 217 S. W. (Mo.) l. c. 69.]

Demurrer.

V. While the defendant filed no demurrer to the evidence at the conclusion of the whole case, we have carefully read all the testimony offered at the trial, and find therefrom, that there was abundant substantial evidence offered by the State in support of the verdict rendered. The accident in this case occurred on December 17, 1922. On that date, the Motor Vehicle Law was in force, as shown by the Laws of Missouri, passed at the Extra Session of the General Assembly in 1921, and as recorded on pages 76 and following of said Statutes. Section 19 of said act, page 91, among other things, provides that: ''Every person operating a motor vehicle on the high-

ways of this State shall drive the same in a careful and prudent, manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person,'' etc.

The evidence is set out very fully and need not be repeated at length. The defendant was driving the automobile in question in an easterly direction along Washington Avenue, one of the busy streets of St. Louis, Missouri. He testified that when he was two hundred feet west of the point where the accident occurred, he saw these children out in the middle of Washington Avenue. The evidence in behalf of the State shows that the street was lighted; that defendant gave no danger signals whatever.; that he drove his car over the O'Dell girl, and badly injured her; that instead of traveling slowly, with his car under control, it ran fifty feet beyond the place of injury before it stopped. The evidence of respondent clearly shows that defendant, at the time and place of accident, was not only guilty of *criminal negligence* in running over this girl, but proceeded over said crossing without regard to the rights of these helpless children. The case was well tried under proper instructions and, in our opinion, the defendant has received light punishment for his culpable negligence.

The judgment below was for the right party and is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.