The State v. Fred R. Millin, Appellant.—300 S. W. 694.

Division Two, December 12, 1927.

*Harry L. Donnelly, W. E. Griffin* and *Charles A. Orr* for appellant.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

BLAIR, J.—Appellant was charged with and convicted of the felony of manslaughter. The jury assessed his punishment at imprisonment in the county jail for a term of six months.

The contention that the evidence is not sufficient to support the verdict requires a somewhat detailed statement of the charge and the proof. In substance, the indictment alleged that on September 21, 1925, appellant "feloniously, carelessly and with culpable negligence" drove his automobile with great force and violence against one Josephine McBane, inflicting such injuries that she died as a direct result thereof. The sufficiency of the indictment is well supported by the cases of State v. Renfro, 279 S. W. 702, and State v. Scheufler, 285 S. W. 419, cited by the learned Attorney-General in his brief. See also Section 3236, Revised Statutes 1919.

Mrs. Josephine McBane was struck at about 6:30 to seven o'clock p. m., September 21, 1925, at the corner of 30th and Main Streets in

Kansas City, by an automobile driven by the appellant. She was taken to the hospital and shortly thereafter died as the direct result of the injuries she received.

Appellant was a salesman in the employ of an advertising concern. On the morning of the day of the fatal accident, he rented a Chevrolet ''Drive-It-Yourself'' automobile to use in getting about the city in pursuit of advertising contracts. The day was foggy and misting and continued to be so until the moment of the accident. The witnesses are not in exact accord as to the extent of the fog and mist, or whether it was dark or only dusk, at the moment of the accident.

The proof offered by the State tended to show that three automobiles were proceeding quite closely together southward along Main Street and had been moving in that manner for several blocks before reaching 30th Street. An automobile, driven by one Ethel Harbaugh (Miller at the time of the trial), was in the lead. Right behind the Harbaugh automobile was the automobile driven by appellant. The third automobile was driven by Joe Saunders. According to Miss Harbaugh, her automobile was moving southward well between the street-car tracks and the west curb. She saw a woman standing about at the intersection of 30th Street and Main Street and facing toward the tracks, as if waiting to board a street car. Witness was not required to swerve her automobile in the least in order to pass her.

Just as her automobile passed this woman, Miss Harbaugh heard a crash and the grinding of brakes and the body of deceased came rolling along the pavement diagonally toward her own automobile, requiring a quick swerve to the right by her automobile in order to avoid striking the body. An automobile (admittedly the one driven by appellant) immediately passed the Harbaugh automobile. Miss Harbaugh fixed its speed at thirty to thirty-five miles per hour. The Harbaugh automobile and the one driven by appellant were immediately stopped about the middle of the block between 30th and 31st Streets. The Harbaugh automobile was stopped nearer the scene of the accident than was the one driven by appellant. He immediately came back to the Harbaugh automobile and talked with Miss Harbaugh.

Mrs. Gwinn, who was riding with Miss Harbaugh and who was called as a witness in rebuttal, corroborated Miss Harbaugh. Mrs. Gwinn said something about the deceased being in the safety zone, and appellant claimed there was no safety zone. As a matter of fact the proof disclosed that there was no safety zone marked off or otherwise indicated at the street intersection where the deceased was struck and injured, although she was standing at or near the appropriate place from which to board the street cars. Miss Harbaugh and Mrs. Gwinn, as well as the police officers, testified to the

smell of liquor upon appellant's breath and apparent difficulty he had in talking.

Miss Harbaugh noted the license number of the automobile driven by appellant. He got in his machine and drove away and Miss Harbaugh did not see him return. She reported the license number to the police officers, who thus identified the automobile as belonging to a ''Drive-It-Yourself'' company. Through the records of that company the police obtained the name and address of the appellant and arrested him an hour or two after the accident.

Joe Saunders testified that the three automobiles were moving southward along Main Street at a speed of about twenty-five miles per hour, and that, as the three automobiles approached 30th Street, appellant turned his machine to the left and attempted to pass the Harbaugh automobile. Saunders fixed the speed of the appellant's automobile while he was attempting to pass the automobile in front, as thirty, thirty-one or thirty-two miles per hour. Saunders further testified that the Harbaugh automobile did not turn to the right before appellant started to pass it. He did not see deceased at all until he saw her body rolled along the pavement toward the Harbaugh automobile just as the appellant's automobile attempted to pass. Saunders stopped his automobile and assisted other persons in carrying deceased out of the street.

The evidence offered by appellant tended to show that it was dark at the time of the accident and that it was foggy and misting and difficult to see. His own testimony and that of other witnesses tended to prove that he had not been drinking and that he was not intoxicated. He said that he was driving at the rate of fifteen to eighteen miles per hour and was following the Harbaugh automobile as it moved up grade toward 30th Street. He did not attempt to pass that automobile at all. At about the intersection of 30th and Main Streets the Harbaugh automobile swerved sharply to the right and he continued to move straight ahead without increasing his speed. He saw nothing in front of him and never saw deceased until his automobile struck her. He immediately put on the brakes and stopped his automobile about the middle of the block south of 30th Street. He went back to the Harbaugh automobile and talked with the ladies there. He then returned to his automobile to park it out of the traffic so that he could go back to the scene of the accident. Seeing some persons carrying Mrs. McBane away, he drove home to tell his wife of the accident and to report it at a police station near his home. His arrest occurred before he had time to make such report.

Appellant had driven automobiles for ten years. He offered proof tending to show that his reputation for sobriety and being a law-abiding citizen was good.

We think that the evidence was of such character as to authorize the submission of the case to the jury. It is true the appellant's testimony tended to show that he was not negligent; but the State's testimony tended to show that he had been drinking to such an extent as to be noticeable on his breath and to affect his speech; that he drove his automobile at a rate in excess of thirty miles per hour in an effort to pass the automobile in front of him; when it was so dark and foggy, according to his own testimony, that he could not see more than a few feet ahead of his automobile. In passing the automobile in front, he must have known that he would pass close to the street-car tracks at the intersection of 30th and Main Streets where persons were liable to be, and properly could be expected to be, waiting to board the street car. The jury was authorized to say, under this evidence, whether appellant should have seen deceased, or, being unable to see her, should have regulated the speed of his automobile accordingly, and, if so, whether his conduct amounted to a reckless disregard for the safety of others who might be on the street. The facts testified to are sufficient to authorize submission of the case to the jury under the rule announced in State v. Horner, 266 Mo. 109, 180 S. W. 873; State v. Watson, 216 Mo. 420, 115 S. W. 1011, and State v. Emery, 78 Mo. 77.

Assignment 17 of the motion for new trial as to refusal of certain instructions is too general to conform to the requirements of Section 4079, Laws 1925, page 198. [State v. Standifer, 289 S. W. 858.]

An assignment of error made in appellant's brief and sufficiently preserved in the motion for new trial is that "the trial court did not properly define 'culpable negligence' in its instruction and did not advise the jury what constituted culpable negligence as requested by the defendant."

Appellant was clearly entitled to have the jury instructed upon what constituted culpable negligence, because he requested Instruction E on that subject and the court refused to give it. No error could be committed in refusing to give Instruction E (assuming that it was a correct definition of culpable negligence), if those words were properly defined in other instructions. This the court undertook to do in Instruction 4, which is as follows:

"Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man would not do under all the circumstances surrounding each particular case."

This definition of culpable negligence was nothing more than a definition of ordinary negligence for which an action for damages only could be maintained. It entirely omits the element that the life or limb of another person is endangered by such act or failure to act.

In State v. Weisman, 256 S. W. 740, this court approved the following definition of culpable negligence: "The omission on the part of one person to do some act, under given circumstances, which an ordinarily careful and prudent man would do under like circumstances or the doing of some act under given circumstances which an ordinarily careful and prudent man, under like circumstances, would not do, by reason of which omission or act another person is directly endangered in life or bodily safety." [See also State v. Coulter, 204 S. W. 5; State v. Beckham, 306 Mo. 566, 267 S. W. 817; State v. Winkler, 309 Mo. 28, 273 S. W. 1040; State v. Miller, 234 S. W. 813.]

Instruction 4, given by the court, is in identical language with, and was probably copied from, State v. Emery, 78 Mo. 77, or State v. Horner, 266 Mo. 109, 180 S. W. 873. But, in neither of those cases was the correctness of an instruction in that form before the court. In the Emery case, the defendant recklessly flourished a pistol which proved to be loaded and which was discharged with fatal results. The instruction given in the case and actually approved by this court announced the doctrine: "That in order to find a person guilty of manslaughter in the fourth degree, it is sufficient to show that the shooting, though unintentionally done, was the result of negligence in handling the firearm, *indicating on the part of such person a carelessness or recklessness incompatible with a proper regard for human life.*"

In the Horner case this court defined as erroneous an instruction defining culpable negligence which required of defendant in that case "the highest degree of care which a very prudent and ordinary skilful driver of an automobile would have used under the same or similar circumstances."

Quoting from the Emery case, we there said: "Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man would not do under all the circumstances surrounding each particular case. [State v. Emery, 78 Mo. l. c. 80.]"

Thus it is apparent that nothing said in either the Emery or Horner cases can be taken as any authoritative pronouncement of this court approving the definition of culpable negligence found in Instruction 4 in the case at bar. Having omitted the element that the act or omission in question endangered the life or limb of another person, Instruction 4 was clearly erroneous under the cases we have cited.

But it seems to us that even the definition of culpable negligence quoted by us from State v. Weisman does not properly and fully define culpable negligence. That definition is nothing more than a definition of ordinary negligence, with only the additional requirement that the life or limb of another be directly endangered thereby.

To be a crime the negligent act must involve the element of "carelessness or recklessness incompatible with a proper regard for hu-

man life." [State v. Emery, supra.] In State v. Haines, 160 Mo. 555, l. c. 569, 61 S. W. 621, this court cited the Emery case approvingly in holding that it was sufficient to authorize conviction of manslaughter in the fourth degree "to show that the shooting though unintentionally done was the result of negligence in handling the firearm in such a manner as indicated a carelessness or recklessness of human life."

In State v. Grote, 109 Mo. l. c. 349, 19 S. W. 93, we said: "The unintentional killing of a human being, through the negligent handling of a pistol in a way indicating recklessness incompatible with human life, is manslaughter of the fourth degree. [State v. Emery, 78 Mo. 77.]"

In discussing homicide through culpable negligence, 13 Ruling Case Law, 859, says: "Responsibility is to be determined pursuant to the general principles of negligence, the fundamental of which is knowledge, actual or imputed, that the act of the slayer tended to endanger life. The facts must be such that he reasonably could have foreseen the fatal consequences of his act. Action accompanied, not only with no intent to do harm, but under a reasonable belief that no harm is possible, is clearly wanting in every essential element of crime."

In discussing homicide by negligent act under the subject of involuntary manslaughter, 29 Corpus Juris, 1154, uses this language: "While the kind of negligence required to impose criminal liability has been described in different terms, it is uniformly held that it must be of a higher degree than is required to establish negligence upon a mere civil issue, and it must be shown that a homicide was not improbable under the facts as they existed which should reasonably have influenced the conduct of accused."

In Robertson v. State, 31 Am. Rep. 602, it was said: "Negligence in the performance of a lawful act, and a fortiori, negligence in sport, may indeed make the act unlawful, if the person see danger probably arising therefrom to others and yet persists. [See Lee v. State, 1 Col. 62.] But the careless use of a dangerous article or instrument in ignorance or with a laudable purpose, is not necessarily unlawful. [Ann v. State, 11 Humph. 159.] Mere negligence, not only with no intent to harm, but under the belief that no harm was possible, is clearly wanting in every essential element of crime."

The definition of culpable negligence heretofore approved in State v. Weisman and other cases is mere negligence, such as would be actionable in a civil suit, whereby life or limb is directly endangered. Culpable negligence, as used in our statute (Sec. 3236, R. S. 1919), means something more than this. That definition does not exclude the want of criminal intent, nor require the finding of any facts from which the criminal intent may be inferred by the jury. The Emery case and other cases cited and the texts from which we have quoted

properly include, in a definition of culpable negligence, the element of reckless disregard of the consequences of the act or the omission, from which the criminal intent may properly be inferred.

Before a person may be convicted of manslaughter by culpable negligence under our statute, not only must death have ensued from the negligent act or omission of such person, but there must be facts and circumstances in evidence tending to prove that such person was actuated at the time by a reckless disregard of the consequences of his act, from which the jury may reasonably infer the criminal intent so essential to guilt in every lawful conviction for violation of our criminal statutes.

Instruction 4 failed even to conform to the definition of culpable negligence approved in the Weisman case and other cases cited. When properly understood, the Emery and Horner cases are not authority tending to support the correctness of such instruction. That instruction fell far short of submitting to the jury a correct definition of culpable negligence as including the element of reckless disregard of the consequences.

Other errors complained of are of such character that they will hardly recur upon another trial and need not be considered.

For error in failing to define culpable negligence properly, the judgment is reversed and the cause remanded for retrial. All concur.