STATE, Respondent, v. BATES, Appellant.

(271 N. W. 765.)

(File No. 7824.   Opinion filed March 4, 1937.)

*Longstaff & Gardner*, of Huron, for Appellant.

*Walter Conway*, Atty. Gen., *Herman L. Bode*, Asst. Atty. Gen. and *Leo A. Temmey*, State's Atty., and *Chas. P. Warren*, Asst. State's Atty., both of Huron, for the State.

RUDOLPH, P. J. The defendant, Herbert Bates, was convicted of manslaughter in the second degree. The conviction was the result of an automobile collision between two cars, one of which was driven by the defendant. One Gertrude Goodell died as a result of the collision. The defendant, Miss Goodell, and four other persons left the city of Huron about 10 o'clock on the night of August 1, 1934, in the car driven by the defendant to attend a dance being held some distance from Huron. This party started east on Highway No. 14, which is a paved highway running sev-

eral miles east of Huron. On this Highway No. 14 and on the outskirts of the city of Huron, there is what is known as an S-curve. This curve is described in appellant's brief, as follows: "After leaving the city of Huron one crosses a concrete bridge on the James River, then the road curves to the left and crosses under an overhead railway crossing, then turns to the right and continues more or less in a straight course to some gardens where there is a curve 670 feet long, which is a two-degree curve. This is a very slight curve. The next curve is what is called a four-degree curve. The general width of the pavement is 20 feet, although this varies somewhat on curves." There is quite a pronounced upgrade toward the east along the S-curve in the road, and the collision occurred at the top of the grade where a road from the south intersects the paved highway. The car driven by the defendant was coming around these various curves on the paved highway and collided with the car coming onto the paved highway from the south which was being driven in from the road which intersects the paved highway at the top of the grade.

■■ The above statement of facts is sufficient for our present purpose. We discuss the assignment of error which questions the instructions of the court in submitting the case to the jury. This assignment raises the question of the meaning of the term "culpable negligence" as used in section 4024, R. C. 1919. Said section 4024, so far as here material, is as follows: "Every killing of one human being by the * * * culpable negligence of another, * * * is manslaughter in the second degree." Courts are not entirely in accord on the exact meaning of the term "culpable negligence," as used in statutes similar to our section 4024. See Berry, Law of Automobiles, vol. 5, p. 537.

In the State of Wisconsin prior to 1929 there was a statute almost identical to the statute we are now considering, and the Wisconsin court in the case of Clemens v. State, 176 Wis. 289, 185 N. W. 209, 21 A. L. R. 1490, held that the term "culpable negligence," as used in the statute, had no other or different meaning than ordinary negligence. Such a construction seems to us to render the word "culpable," as used in the statute, utterly meaningless. The Wisconsin Legislature in 1929 by chapter 483, Laws of 1929, changed the Wisconsin statute by substituting for

the word "culpable" in the statute, the word "gross," which has materially changed the application of the statute by the court. State v. Whatley, 210 Wis. 157, 245 N. W. 93, 99 A. L. R. 749. The early Wisconsin decision was based to a large extent upon certain decisions of the Missouri court construing a similar statute. See State v. Pauly (Mo. Sup.) 267 S. W. 799; State v. Miller (Mo. Sup.) 234 S. W. 813; State v. Coulter (Mo. Sup.) 204 S. W. 5; State v. Horner, 266 Mo. 109, 180 S. W. 873; State v. Weisman (Mo. Sup.) 256 S. W. 740. However, after the Clemens decision by the Wisconsin court, the Missouri court in the case of State v. Millin, 318 Mo. 553, 300 S. W. 694, 697, reversed all former decisions in Missouri touching upon this subject and said: "The definition of culpable negligence heretofore approved in State v. Weisman and other cases is mere negligence, such as would be actionable in a civil suit, whereby life or limb is directly endangered." Culpable negligence as used in our statute (Section 3236, R. C. 1919), means something more than this. That definition does not exclude the want of criminal intent, nor require the finding of any facts from which the criminal intent may be inferred by the jury." As so ably pointed out in the cases of People v. Angelo, 246 N. Y. 451, 159 N. E. 394, and State v. Custer, 129 Kan. 381, 282 P. 1071, 67 A. L. R. 909, this statute which we are now considering was enacted originally with the purpose and intent of codifying the common law on the subject, and, as pointed out in the opinions in the cases last cited, the common law required that negligence to be sufficient to support a criminal action must be something more than mere inadvertance. There must be some action from which the jury might reasonably infer the mens rea. The statute has described this action as "culpable." To define the word "culpable" as used in the statute by substituting therefor some equally indefinite term such as "gross," "wanton," or even "reckless" does not seem to us very helpful, or to convey to a jury any meaning not already expressed by the words used in the statute.

■■ This court was confronted with a problem very similar to that with which we are now confronted in the case of Melby v. Anderson, 64 S. D. 249, 266 N. W. 135, 137, wherein we construed the words "gross negligence or wilful and wanton misconduct," as used in the so-called guest statute, chapter 147, Laws of 1933. It is our opinion that the conduct which the Legislature was

there attempting to describe by use of the words "gross, wilful and wanton" is the same conduct which, when brought before a jury in a criminal case under the statute here involved, is sufficient to give rise to the mens rea which, as we have said above, we believe to be necessary before a conviction might be sustained under this section 4024. In that case we said: "To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff." So it now seems to us, applying what we there said to this more general statute, that before the acts of a person come within the meaning of the term "culpable negligence" as used in the statute now under consideration, the jury must find as a fact that the defendant intentionally did something which he should not have done or intentionally failed to do something which he should have done under such circumstances, that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce. We believe this definition more nearly describes that action which the Legislature had in mind when it used the term "culpable negligence" than any other statement or definition that we have been able to find or that has been called to our attention.

Defendant's requested instruction No. 5 gave practically the same meaning to the term "culpable negligence" that we have given to it herein. This requested instruction was refused. An examination of the instructions given by the court does not disclose that the court included within its instructions the meaning of the term "culpable negligence," as we have herein defined it. We think this was error prejudicial to the defendant.

The judgment and order appealed from must be, and are, reversed.

POLLEY and WARREN, JJ., concur.
ROBERTS and SMITH, JJ., not sitting.