STATE of Missouri, Respondent,

v.

Robert Clarence FENNEWALD, Appellant.

No. 47775.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1960.

Raymond A. Bruntrager, St. Louis (Joseph G. Stewart, Stewart & Bruntrager, St. Louis, of counsel), for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Special Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant was convicted of manslaughter and sentenced to imprisonment in the Workhouse of the City of St. Louis and fined $1,000, this being the punishment assessed by the jury. Defendant has appealed and contends the court erred in refusing to direct a verdict of acquittal.

The case was submitted on Count II of the indictment which charged that defendant "agreed to an automobile race with one Walter Schweppe"; that "acting jointly in pursuance of said agreement" defendant and Walter Schweppe were driving separate automobiles "being propelled upon, over and along Riverview Drive, an open and public street in the City of St. Louis"; and that "while so driving, operating, and in charge and control of the said automobiles" they did "carelessly, recklessly, feloniously, and with culpable negligence, drive, propel, and force the said automobile operated by the said Walter Schweppe with great force and violence against and upon a certain automobile in which one Gerald E. Miles was then and there the operator," causing his death. Defendant says a verdict of acquittal should have been directed because there was no substantial evidence that he "was guilty of culpable negligence in the operation of his vehicle which was the proximate cause of the death of Gerald Miles."

The evidence, all of which was offered by the State, showed the facts hereinafter stated. Defendant accompanied by James Thompson was driving a Corvette automobile from about 8:00 p. m. until shortly after midnight when the fatal collision occurred on November 23, 1958. During that period defendant drank five cans of Falstaff beer. They met Walter and Martin Schweppe, who were in a 1958 Plymouth, at a drive-in restaurant at Riverview Circle, then went to the new Mark Twain Highway, "which was not open yet to the public" and conducted several drag races there. Both cars were then driven to Riverview Circle from which Riverview Drive proceeds in a northeasterly direction to the Chain of Rocks Bridge near the north city limits. From the Circle to St. Cyr Road, northbound and southbound lanes of Riverview are separated by a center island. Thereafter, it has four traffic lanes, not divided, with pavement 40 feet wide. After meeting

near the Circle, the two cars went north along the divided part of Riverview, side by side, at about 35 to 40 miles per hour. The Schweppes' car was in the outside curb lane, and defendant's car was in the inside lane next to the center of the street. Soon after they left the divided part, Thompson gave a signal by suddenly dropping his arm (held out the car window) which started the race between them and the cars acccelerated to attain a speed of from 100 to 110 miles per hour. (The speed limit on this street, as fixed by ordinance, was 40 miles per hour.) After they went around a slight bend in the road side by side, with the Corvette about a fender ahead of the Schweppes' car, defendant said he saw another car ahead in the curb lane. Defendant drove on up the center of the street and did not see what happened thereafter but the Schweppes' car came across the center line and struck the southbound car driven by Miles. Both cars caught fire and burned and Miles and both of the Schweppes were killed. Barbara Ruhland riding with Miles was able to get out of his car. She testified that just before the collision she saw two sets of headlights approaching from the south; and that "one set of headlights moved toward the other set of headlights, pulled apart and then went back together." She said, after that: "I saw the car hit something on the side and then it came across the road. * * * I saw the headlights come at us." She did not notice any other car going north ahead of these two. Police officers found a rut or indentation in the dirt on the east shoulder for 111 feet and skid marks on the pavement from the curb for 240 feet finally going directly across the street. At the point where the rut started the concrete curb was blackened and chipped. The cars stopped near a utility pole on the west side of the street which was charred by the fire.

Defendant contends that he could not be guilty of manslaughter, claiming the act of culpable negligence causing the death of Miles was not his act but instead was the act of the driver of the Schweppe car. Defendant says the law is that "there can be no common design to commit a negligent act resulting in homicide"; and that "to render a person guilty of negligent homicide, the negligent act which caused the death must have been the personal act of the party charged and not the act of another"; citing State v. Gartland, 304 Mo. 87, 263 S.W. 165, 170, cited in 40 C.J.S. Homicide § 9, page 847. In the Gartland case, two police officers were shooting toward a car they were pursuing and a girl in another car ahead of them was killed. The ruling in the Gartland case (263 S.W. loc. cit. 170) was on an instruction authorizing conviction on findings that the officers were guilty of culpable negligence in shooting toward the car and that in so shooting "they were acting under a common design and purpose." In holding the instruction erroneous, it was said: "There could be no common design to commit a negligent act. The defendants Pauly and Gartland were not charged with a common design to commit an unlawful act, thus causing the death. The charge is a negligent act." (See also State v. Pauly, Mo.Sup., 267 S.W. 799, a case of another officer involved in the same incident.) We do not consider the Gartland case controlling on the issue of whether a jury case was made by the evidence herein; but we also think the rule was stated too broadly therein. Furthermore, in this case, defendant and Schweppe certainly were charged with a common design to commit an act dangerous to the lives of others, namely an agreement to race their automobiles on a city street, and that they did so carelessly, recklessly and feloniously and with culpable negligence.

In the Gartland case, it was said: "A case directly in point here is Rex v. Mastin, 6 C. & P. 396, where two persons were racing on horseback on a public highway and passed a vehicle; one of them passed in safety and the other collided with the vehicle, causing the death of the person in the vehicle. The court held that the rider who passed in safety could not be held for manslaughter simply because at the time

engaged in a common enterprise with one whose negligence directly caused the death." However, in the Mastin case, the court said: "[I]f two are riding fast, and one of them goes by without doing any injury to any one, he is not answerable, because the other, riding equally fast, rides against some one and kills him." An agreement to race or incitement to race was not shown or considered. However in a later case, Regina v. Swindall, 2 C. & K. 230, in which there was a charge of inciting to race, it was held "if two men drive separate vehicles at a furious and dangerous speed along the highway, each inciting and abetting the other, and one of them drives over and kills a person, the one thus causing the death is guilty of manslaughter as principal in the first degree, and the other is guilty as principal in the second degree. And the same would be true of two persons in the same vehicle, one driving and the other inciting and abetting him." (See Clark & Marshall Crimes 459, Sec. 8.03.) In the Swindall case, the court said: "If two persons are in this way inciting each other to do an unlawful act, and one of them runs over a man, whether he be the first or the last, he is equally liable; the person who runs over the man would be a principal in the first degree, and the other a principal in the second degree." Of course, under our statute, Sec. 556.170, (statutory references are to RSMo and V.A.M.S.) they would be guilty as principals.

The Swindall case was cited as authority by the Supreme Court of Oregon in State v. Newberg, 129 Or. 564, 278 P. 568, 63 A.L.R. 1225 (see annotation 1232), in holding that each of two persons who joined in shooting at an object they supposed to be a deer, but which was a man on a horse, who was killed, would, if culpably negligent, be guilty of manslaughter. One of the men held a spotlight on the object while the other fired. In State v. McVay, 47 R.I. 292, 132 A. 436, 437, 44 A.L.R. 572 (see annotation 576), where a passenger was killed by the explosion of the boiler of a steamer, the Supreme Court of Rhode Island held the employer of the captain and engineer, operating the steamer, could be guilty as an accessory before the fact to the crime of manslaughter, although he was not present on the steamer at the time. It was alleged that he knew the boiler was "worn, corroded, defective, and unsafe." The court said: "While every one must agree that there can be no accessory before the fact when a killing results from a sudden and unpremeditated blow, we do not think it can be broadly stated that premeditation is inconsistent with every charge of manslaughter. Manslaughter may consist, among other things, of doing an unlawful act resulting in unintentional killing, such as violation of motor vehicle laws or administration of drugs to procure an abortion. 29 C.J. § 136, p. 1149. Manslaughter is likewise committed if an unintentional killing is occasioned by gross negligence in the doing of an act lawful in itself. 29 C.J. § 141, p. 1154. There is no inherent reason why, prior to the commission of such a crime, one may not aid, abet, counsel, command, or procure the doing of the unlawful act or of the lawful act in a negligent manner. * * * Involuntary manslaughter, as set forth in this indictment, means that defendants exercised no conscious volition to take life, but their negligence was of such a character that criminal intention can be presumed. 29 C.J. 1154. The crime was consummated when the explosion occurred. The volition of the principals was exercised when they chose negligently to create steam which the boiler could not carry. The doing of the act charged or failure to perform the duty charged was voluntary and intentional in the sense that defendants exercised a choice among courses of conduct. It is obvious that Kelley could participate and is charged with participating in procuring defendants to act in a grossly negligent manner prior to the explosion."

Likewise in State v. Di Lorenzo, 138 Conn. 281, 83 A.2d 479, 481, the Supreme Court of Connecticut said: "[O]ne who engages with others in a common purpose

to carry on an activity in a reckless manner or with wanton disregard for the safety of others is guilty of involuntary manslaughter, if the death of another is caused thereby, even though he is not present when the homicide occurs." In that case, the court held a defendant guilty of manslaughter who aided and abetted others in the unlawful installation and operation of an alcohol still, which resulted in the burning of the building causing the death of children of tenants.

■ Our conclusion is that under the evidence herein, considered most favorably to the State as it must be, defendant could properly be found guilty of manslaughter by reason of entering into an agreement to conduct an automobile race on a city street and doing so in a reckless manner, with wanton disregard for the safety of others, from which the death of Miles resulted. Although he did not intend to take life, he did intend that the two automobiles should be raced on a city street which reasonably meant to drive them at the highest speed they could attain and far in excess of lawful speed. Doing so under these circumstances was negligence of such a character that criminal intention could be presumed. However, defendant further contends the State wholly failed to prove the allegations of the indictment that he and Walter Schweppe agreed to race and that Walter Schweppe operated the automobile that was forced or propelled into collision with Miles' car. While it was necessary to show this agreement by circumstantial evidence, we conclude that the evidence was sufficient to do so. The evidence was that the Schweppe brother with the long hair was the one driving the car that evening; that he was the younger of the two; and that the younger one was Walter. It was also shown that the drivers of both cars took them from the Circle to the Mark Twain Highway and had several races there during the period preceding the fatal race. After returning to the Circle, they drove side by side to the point where they started the fatal race and started it on a

signal from defendant's companion. In fact, we consider the evidence sufficient to show such an agreement with both of the Schweppes, which would include Walter. In this connection, defendant contends the evidence concerning the drag racing on the Mark Twain Highway was inadmissible saying it was too remote to be relevant to the issues in this case and that there was no similarity in conditions of those races and the later fatal one. Defendant cites Harter v. King, Mo.App., 259 S.W.2d 94; Wood v. Claussen, Mo.App., 207 S.W.2d 802; and Cunningham v. City of Springfield, 226 Mo.App. 23, 31 S.W.2d 123. In the Cunningham case, evidence of visibility of an obstruction in a roadway at another time was held admissible because similarity of conditions with those at the time of the casualty involved. In the Harter and Wood cases, evidence of negligent speed or a negligent act at another time and place was held inadmissible. However, in this case, the evidence of the drag races was relevant on the issue of an agreement to race and we hold it was admissible on that basis. (See State v. Saussele, Mo.Sup., 265 S.W.2d 290, 296, and cases cited.) In considering the issue of defendant's culpable negligence, we should not overlook either the testimony of Miss Ruhland concerning the movements of the two approaching cars just before one struck something on the side of road and came across to collide with the Miles car. We, therefore, hold that the court properly refused to direct a verdict of acquittal.

■ Defendant's objection to Instruction No. 3 is ruled by what we have said. This instruction stated the principle of Sec. 556.170 making all persons guilty as principals who act with common intent and also anyone who aids, abets, assists, advises or encourages the crime. Defendant says it was erroneous because it permitted recovery upon the basis of culpable negligence of one other than the defendant; and says Instruction 4 was erroneous for the same reason. Our ruling on defendant's claim of error in refusing to direct

a verdict of acquittal shows this contention to be without merit. Defendant makes further claims of error as to Instruction 4, namely that it is broader than the charge of the indictment because it permits the jury to find him guilty if he agreed with either of the Schweppe brothers to race and acted with either of them in doing so; that there was no substantial evidence that the other Schweppe brother, Martin, drove the car in the fatal race and drove it against Miles' car; that the factual situation submitted is insufficient for finding defendant or either of the Schweppes guilty of negligence; and that it did not require a finding that any negligence on the part of defendant was a proximate cause of the collision.

■ Instruction 4, authorizing the jury to find defendant guilty of manslaughter, submitted the following facts:

"* * * Bearing in mind the definition of culpable negligence, you are instructed that if you find and believe from the credible evidence, beyond a reasonable doubt, in the City of St. Louis, Missouri, on the 23rd day of November, 1958, that defendant and one of the Schweppe brothers, deceased, entered into an agreement to act in concert and together to race their respective automobiles upon, over, and along the open and public streets and highways of the City of St. Louis, Missouri, and if you further find and believe from the evidence, beyond a reasonable doubt, that pursuant to such an agreement, defendant and one of the Schweppe brothers, deceased, acting in concert and together did race their respective automobiles shown in evidence in competition with each other and that defendant and one of the Schweppe brothers, deceased, acting in concert and together, were operating, driving and in charge and control of their respective automobiles which were being moved and propelled northwardly upon, over and along Riverview Drive, an open and public street in the City of St. Louis, Missouri, and that the defendant and one of the Schweppe brothers, deceased, or either of them while so driving, operating and in charge and control of their respective automobiles, did carelessly, recklessly, feloniously and with culpable negligence drive, propel and force their said automobiles, or either of them, with great force and violence against, upon and into a collision with an automobile mentioned in evidence being then and there operated southwardly by one Gerald E. Miles, upon, over and along the aforesaid Riverview Drive, thereby throwing the said Gerald E. Miles in and about his said car and causing his said car to catch on fire, * * *."

■ Defendant cites State v. Kyle, 177 Mo. 659, 76 S.W. 1014, 1015, in which we held that "an instruction in a criminal case can be no broader than the allegations in the indictment"; and that a material defect in an indictment cannot be supplied by an instruction. Defendant also cites State v. Stewart, 228 Mo.App. 187, 63 S.W.2d 210, and State v. Wright, 339 Mo. 41, 95 S.W.2d 1159, 1160, 1161. In the Wright case we held that an indictment could not be amended to strike out the name of one person and insert the name of a different one as owner of the home alleged to have been burglarized, allegations of ownership being necessary. We further held therein that Sec. 3562, R.S.1929, now Sec. 546.080, superseded by Supreme Court Rule 26.04, V.A.M.R., was inapplicable because this was a material change and such "a variance therein, between the charge and proof, would have been fatal." (See also State v. Houston, 19 Mo. 211; 27 Am.Jur. 678, Sec. 118; 42 C.J.S. Indictments and Informations § 241, pages 1256–1259.) Correction of a misnomer is usually not considered to be a material matter. An indictment "is an accusation against a person, and not against a name." United States v. Fawcett, 3 Cir., 115 F.2d 764, 767, 132 A.L.R. 404. However, when the amendment involves the change of identity by specifying a different person, especially a person with whom the defendant is charged to be acting jointly, then it is

a material change and this would likewise be a fatal variance. Here defendant was charged with making the agreement to race with Walter Schweppe and with racing with him. Moreover, Walter Schweppe was the person who was alleged to have been operating the car racing with defendant's car and he not only was the person defendant was charged with acting jointly to race but also was the one whose acts in combination with defendant's acts were alleged to have caused the car he was driving to strike Miles' car, resulting in the death of Miles. Furthermore there was no evidence that Martin Schweppe was the driver. We, therefore, hold that Instruction 4 was prejudicially erroneous in authorizing the jury to find defendant guilty if someone other than Walter Schweppe was operating the car racing with him.

Since this case must be retried, we will say that defendant's other objections to Instruction 4 are without merit. (See State v. Winkler, 309 Mo. 28, 273 S.W. 1040, 1042; State v. Hinojosa, Mo.Sup., 242 S.W.2d 1, 9.) However, an hypothesization of high, dangerous, negligent, unlawful speed would be supported by the evidence and within the general allegations of the indictment and make the submission clearer. We further hold that the evidence of drinking beer by defendant during the evening was admissible as relevant and material upon the issue of his negligence. (20 Am.Jur. 252, Sec. 263; 38 Am.Jur. 1019, Sec. 322: Annotation 26 A.L.R.2d 359.) No doubt this and the other matters of evidence raised by defendant (coroner's post-mortem, tire marks on the shoulder, skid marks on the pavement and broken curb) will be made more definite and connected up better on retrial. As to the post-mortem see State v. Lunsford, Mo. Sup., 338 S.W.2d 868.

The judgment is reversed and the cause remanded.

All concur.